AXTMAYER, DEMANDANTE Y APELADO, *v.* KESSINGER, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Distrito Primero, en procedimiento de *mandamus.*

No. 3107.—Resuelto en marzo 26, 1924.

*Mandamus*—REQUERIMIENTO PREVIO.—Apareciendo que si bien el peticionario no requirió personalmente al funcionario público a quien se trata de obligar por medio del *mandamus* para que ejecutara el acto que el peticionario alega que debió ejecutar, lo hizo la otra parte que con el peticionario contrató; no puede sostenerse que sea insuficiente la solicitud y contraria a la jurisprudencia establecida por esta corte entre otros en los casos de *Savala et al., v. Consejo Ejecutivo,* 9 D. P. R. 211, y *Morales* v. *Wilson et al.,* 16 D. P. R. 751.

ID.—AUDITOR DE PUERTO RICO—GOBERNADOR—RECURSO CONTRA LAS RESOLUCIONES DEL AUDITOR—DERECHO DE ACCIÓN DESPUÉS DE RESUELTO EL CASO POR EL GOBERNADOR—RECURSO ANTE LOS TRIBUNALES.—Cualquier persona perjudicada en la liquidación (*settlement*) de su cuenta o reclamación, de acuerdo con lo dispuesto en la sección 21 del Acta Orgánica, podrá apelar al Gobernador, y sólo después de agotada la vía gubernativa es que podrá acudir a la judicial en defensa de sus derechos. Examinados los hechos de este caso, se decidió que habiendo la Junta de Síndicos apelado al Gobernador, podía entenderse agotada la vía gubernativa y por tanto que el peticionario estaba en condiciones de ventilar su asunto en las Cortes de Justicia, sin que su gestión pudiera considerarse como un ataque colateral, sino como el directo a que se refiere la sección citada de la Ley Orgánica al prescribir que: ''La de-

cisión del Gobernador será definitiva, con sujeción al derecho de acción que en contrario pueda disponerse por ley.''

ID.—UNIVERSIDAD DE PUERTO RICO—JUNTA DE SÍNDICOS—NOMBRAMIENTO DE PRO-
FESORES Y FIJACIÓN DE SUS SUELDOS—AUDITOR DE PUERTO RICO.—De acuerdo con el estatuto, es a la Junta de Síndicos de la Universidad de Puerto Rico a la que corresponde el nombramiento de los profesores de la Universidad y la fijación de sus sueldos, y cuando un profesor ha sido debidamente nombrado por la Junta y se envían al Auditor de Puerto Rico todos los documentos necesarios creditivos del nombramiento y del ejercicio del cargo, surge en el Auditor el deber ineludible de actuar en la forma fijada por la ley y los reglamentos para que el sueldo fijado por la Junta sea satisfecho al profesor, y si a ello se niega, puede ser compelido por un auto de *mandamus*.

Los hechos están expresados en la opinión.

Abogados del demandado: *Hon. Attorney General* y *Sres. L. Samalea* y *C. Llauger Díaz.*

Abogado del apelado: *Sr. J. Valldejuli.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

El demandante es el Principal de la Escuela Superior de la Universidad de Puerto Rico. El demandado, el Auditor de la Isla. El procedimiento seguido el de *mandamus.*

La Universidad de Puerto Rico se estableció por ley de marzo 12 de 1903. Está gobernada por una Junta de Síndicos y sostenida por el Gobierno Insular, recibiendo además ayuda del Gobierno Federal de acuerdo con leyes especiales sobre la materia. La sección 7 de la ley, en lo pertinente, dice ". . . . La Junta tendrá facultad para dictar ordenanzas, estatutos y reglamentos para el gobierno de la Universidad; fijar, aumentar y reducir el número de catedráticos, profesores y demás empleados de la Universidad; nombrar o separar a éstos, determinar la cuantía de sus sueldos y prescribir sus obligaciones; . . . .''

En uso de esas facultades, la Junta de Síndicos creó el cargo de Principal de la Escuela Superior, nombró para desempeñarlo a Joseph H. Axtmayer, el demandante, y le asignó el sueldo anual de *dos mil quinientos dólares* para el año escolar de 1922–23. Axtmayer aceptó el nombramiento, tomó posesión del cargo y comenzó a desempeñarlo. El 23

de septiembre, 1922 de acuerdo con el presupuesto aprobado por la Junta de Síndicos, fué enviada al Auditor una lista de pago figurando en ella el demandante con la suma de doscientos cincuenta dólares devengados por su sueldo correspondiente al dicho mes de septiembre y el Auditor se negó a autorizar, firmar y expedir dicha lista alegando que el salario de Axtmayer debía permanecer para el dicho año escolar de 1922–23 igual al que disfrutó el año anterior 1921–22, que era el de *dos mil doscientos cincuenta dólares.*

No conforme Axtmayer, inició este pleito de *mandamus* que fue decidido favorablemente, apelando entonces el Auditor para ante este Tribunal Supremo. En su alegato señala la comisión de cinco errores, así:

"I.—La corte erró al no declarar en este caso que la petición no aduce hechos suficientes para constituir una causa de acción.

"II.—La corte erró al no declarar en este caso que el peticionario tiene un remedio rápido, adecuado y eficaz en ley.

"III.—La corte erró al no declarar en este caso que la decisión del Gobernador es definitiva en cuanto al demandado se refiere, a menos que no se demuestre que fue anulada a propia acción del Gobernador o por una corte de justicia.

"IV.—La corte erró al no declarar en este caso que habiéndose adoptado por el Gobernador una acción final y definitiva, no revocada, el recurso de *mandamus* contra el Auditor no es el remedio adecuado y propio ya que la decisión del Gobernador no podía ser atacada colateralmente por medio de un *mandamus* contra el Auditor.

"V.—La corte erró al no declarar que la prueba en este caso no es bastante para ordenar la expedición del auto definitivo de *mandamus.*"

1. Examinemos el primer error. Sostiene el apelante que en la petición no se alega que el Auditor fuera previamente requerido para ejecutar el acto a cuyo cumplimiento se trata de obligarle y por tanto que no aduce hechos suficientes de acuerdo con la jurisprudencia establecida por esta Corte Suprema, entre otros, en los casos de *Savala et*

al. v. *Consejo Ejecutivo*, 9 D. P. R. 211, y *Morales* v. *Wilson et al.* 16 D. P. R. 751.

Es cierto que en dichos casos se resolvió que "para que una solicitud de *mandamus* pueda ser tomada en consideración, es necesario que antes se haya suplicado al demandado que ejecute el acto a cuyo cumplimiento se trata de obligarle, y que éste se haya negado a ello." Pero estamos enteramente conformes con el apelado en que de la petición aparece cumplido lo que la jurisprudencia requiere. El pago fué exigido por la propia Junta de Síndicos y la negativa del Auditor fue terminante. No era necesario que Axtmayer repitiera la actuación de la Junta.

2. Los tres errores que siguen pueden estudiarse conjuntamente.

El artículo 20 de la Carta Orgánica de Puerto Rico, en lo pertinente, dice:

"El Presidente nombrará un Contador, . . . . El contador examinará, intervendrá y liquidará todas las cuentas concernientes a las rentas e ingresos, de cualquier procedencia que fueren, del Gobierno de Puerto Rico . . . .; e intervendrá, de acuerdo con la ley y reglamentos administrativos, en todos los gastos de fondos o propiedades pertenecientes al Gobierno . . . . Llevará las cuentas generales del Gobierno y guardará los comprobantes pertenecientes a las mismas . . . . Las decisiones del Contador serán finales, a no ser que se apele de ellas por la parte perjudicada o por el jefe del departamento interesado, dentro de un año, en la forma que se prescribe más adelante. El Contador tendrá, excepto en los casos que se determinan más adelante, la misma autoridad que se confiere por la ley a los diferentes contadores de los Estados Unidos y al Contador del Tesoro de los Estados Unidos, y está autorizado para comunicarse directamente con cualquier persona que tenga reclamaciones pendientes de resolución ante él, o con cualquier departamento, funcionario o persona que tenga relaciones oficiales con su oficina . . . .

Y el 21, copiado íntegramente, es como sigue:

"Artículo 21.—Cualquier persona perjudicada en la liquidación de su cuenta o reclamación por la acción o decisión del Contador,

podrá, dentro de un año, entablar una apelación por escrito ante el Gobernador, en la cual expondrá específicamente la resolución particular, contra la que apela, tomada por el Contador, y las razones y autoridades en que se apoya para pedir la revocación de dicha decisión. La decisión del Gobernador en tal caso será definitiva, con sujeción al derecho de acción que en contrario pueda disponerse por ley.''

Sostiene el apelante que habiendo decidido adversamente la reclamación del demandante, la ley otorgaba a éste un claro y adecuado recurso en la vía administrativa que el demandante no ejercitó, hallándose por tanto impedido de recurrir a la vía judicial. Y sostiene el apelado que su caso no está comprendido en la sección 21 porque nada tenía el Auditor que liquidar tratándose como se trataba del pago de un sueldo fijado por el organismo con facultad para ello, reduciéndose su misión a examinar si el sueldo había sido realmente fijado y el cálculo estaba bien hecho. Ninguna de las partes ha citado jurisprudencia concreta interpretativa de preceptos de ley iguales o similares a los de la Ley Orgánica de Puerto Rico.

La cuestión ha sido detenidamente estudiada por el tribunal. Usándose en el original inglés de la ley la palabra ''settlement'' que tiene un significado amplísimo, nos inclinamos a decidir que contra la decisión del Auditor cabía y debió interponerse apelación ante el Gobernador.

Esto, de acuerdo con la regla bien conocida que establece que debe agotarse la vía gubernativa antes de acudirse a la judicial, dispondría del recurso, si no apareciera de los autos que si bien el demandante no apeló personalmente al Gobernador, lo hizo la otra parte que contrató con él,—la Junta de Síndicos—, y la resolución final del Auditor se adaptó al criterio sustentado por el Gobernador. La vía gubernativa fue de hecho agotada, no existiendo por tanto, el segundo de los errores señalados.

El artículo 21 de la Ley Orgánica prescribe que la de-

cisión del Gobernador en tal caso será definitiva, con suje-
ción al derecho de acción que en contrario pueda dispo-
nerse por ley. No indica el apelante cuál pueda ser el de-
recho de acción a que la ley se refiere, pero sostiene que
si se estima que el caso fue resuelto por el Gobernador, la
resolución de dicho funcionario no puede ser atacada colate-
ralmente.

¿ Constituye este pleito un ataque colateral de la resolu-
ción del Gobernador ?

Los autos demuestran que entre la Junta de Síndicos y
el Auditor hubo un conflicto de criterio con motivo de la
interpretación de la sección 2 de la ley No. 40, de 1921, que
ordenó la reducción de los sueldos de los funcionarios pú-
blicos. El Auditor creyó que la medida se aplicaba a los
profesores de la Universidad. La Junta que no. Forma
parte de los autos una extensa opinión del Fiscal General
en pro del criterio de la Junta. Eso no obstante el Auditor
insistió y la Junta apeló al Gobernador dicidiendo éste, en
agosto 18, 1922, que los sueldos para el año 1922-23 fueran
los mismos que habían sido los del año 1921-22 y a esa
norma ajustó su acción el Auditor. La Junta no estuvo
conforme y en septiembre 23, 1922, envió la lista de pago
de que hablamos al principio de esta opinión. Parece con-
veniente transcribir el siguiente párrafo de la carta con la
que el Presidente de la Junta remitió la lista. Dice así:

*"Since you have verbally stated that there is no doubt in your
mind that the Board of Trustees legally has the power to fix salaries
and since the Governor, while refusing to modify the wording of
his letter consenting that salaries remain as they were last year,
made the verbal statement to you in my presence that you might
proceed to pay the salaries contracted by the Board of Trustees, I
believe that you will concede this last disputed point in regard to
the payment of salaries and approve these pay rolls."*

Prescindiendo de la revocación verbal de su regla por
parte del Gobernador, ya que ese extremo no quedó debi-

damente establecido, y aceptando que el Auditor ajustó finalmente su acción a la regla del Gobernador, entendemos que este auto de *mandamus* no constituye un ataque colateral y puede considerarse como el derecho de acción a que se refiere la sección 21 de la Ley Orgánica.

En el caso de *State* v. *Kenney,* 26 Pac. 197, se resolvió lo que sigue:

"La ley de Montana de marzo 14, 1889, que fija la compensación de los comisionados codificadores en la suma de $4,000 para cada uno, y que dispone que al presentarse al secretario del territorio cualesquiera de los códigos terminados el auditor expedirá libramiento por los sueldos de los comisionados a *pro rata,* constituye una asignación del dinero necesario para la remuneración de los comisionados, y se librará un *mandamus* al auditor del estado para obligarlo a expedir un libramiento en favor de los comisionados que han cumplido con sus deberes en la forma prescrita por la ley."

En el de *State ex rel, Brainerd* v. *Grimes, Auditor,* la opinión de la corte, reportada en 34 Pac. 833, termina así:

"Por tanto, habiendo sido hecha la asignación por ley, y teniendo el relator por todos conceptos derecho a la suma que pide, se declara sin lugar la excepción debiendo librarse un auto perpetuo de *mandamus.*"

El caso de *Burch* v. *Earhart,* de Oregon, puede también citarse como autoridad. Los hechos narrados en la opinión por el Chief Justice Kelly son los siguientes:

"Por una ley aprobada en octubre 20, 1876, haciendo asignaciones para los gastos del gobierno del estado, se asignó la suma de $40,000 para los gastos generales de la penitenciaría. Esa suma parece haber sido insuficiente para pagar los sueldos y sufragar los otros gastos de esa institución por los dos años que comenzaron el segundo lunes del año 1876, quedando un déficit de $9,574.10.

"En 19 de octubre, 1878, se aprobó una ley titulada 'Ley para proveer para los gastos ordinarios del gobierno del estado, y hacer asignaciones generales y específicas,' por la cual se asignaban fondos para los gastos ordinarios del gobierno del estado, asignándose

asimismo la siguiente partida: 'Fondo de la penitenciaría: Por déficits en exceso de anteriores asignaciones, $9,574.10.'

"El apelante era superintendente de la penitenciaría y como tal tenía derecho a la suma de $450 como sueldo por el trimestre que terminó en agosto 31, 1878; pero debido al déficit de que se ha hecho referencia, no se le pagó a su vencimiento. El día 21 de octubre de 1878 compareció ante el apelado como secretario de estado y solicitó de él que, como auditor de las cuentas públicas, examinara la reclamación y expidiera un libramiento al tesorero del estado para el pago de los $450 a que se ha hecho referencia. Por las razones antes expuestas el apelado se negó a ello. El apelante entonces solicitó del juez de la corte de circuito del condado de Marion que expidiera un auto de *mandamus* ordenando al apelado a examinar su reclamación y a expedir un libramiento por la suma debida, o mostrar causas por las cuales se debía negar a ello.

"El apelado contestó el auto y dió las razones que tenía para negarse a examinar y conceder la reclamación, que son substancialmente las siguientes: Que la asignación de $40,000 para los gastos generales de la penitenciaría, hecha por la ley aprobada en octubre 20, 1876, se agotó antes de la fecha en que le fué presentada la reclamación del apelante: que ya se habían expedido libramientos contra ese fondo por la suma total de $40,000; que la reclamación del apelante es un gasto en exceso de la renta del estado por el año fiscal que terminó en septiembre 9, 1878, y que la asamblea legislativa no pasó ley alguna imponiendo una contribución para pagar tal déficit. El apelante presentó una excepción previa general a la contestación y fue desestimada por la corte de circuito y no haciéndose ulterior alegación el auto fué anulado. Contra esta resolución se interpuso apelación.'' Burch v. Earhart, 7 Oregon 64-65.

Procédese entonces a considerar cuidadosamente las cuestiones envueltas, terminando la opinión así:

"Habiéndose hecho una asignación para pagar la reclamación del apelante sostenemos que es el deber del apelado examinar esa reclamación y expedir un libramiento al tesorero por la suma que se encuentre estarse adudando. Se revoca la sentencia y se ordena la expedición de un auto perpetuo de *mandamus*.'' Burch v. Earhart, 7 Oregon 67-68.

Abierto el caso a la investigación y resolución judicial

¿debe confirmarse o revocarse la sentencia de la corte de distrito?

Es tan clara la facultad de la Junta de Síndicos, que no se concibe la actuación del Auditor. Podría quizá explicarse su primera actitud, esto es, aquella que se basaba en la interpretación de la sección 2 de la ley de presupuesto de 1921 relativa a la rebaja de sueldos; pero su resolución última basada en la llamada regla del gobernador, carece en absoluto de fundamento.

La Legislatura apropió en globo la cantidad de ciento veinte mil dólares (Leyes de 1921, p. 243), para el sostenimiento de la Universidad y la Junta de Síndicos formó su presupuesto, asignando los sueldos que debían percibir los profesores. Con arreglo a ese presupuesto la Junta contrató con el demandante y de acuerdo con el contrato preparó la lista de pago y la envió al Auditor. El deber del Auditor de expedir los necesarios documentos para que el pago se realice, es evidente e ineludible. La expedición del auto de *mandamus* fue debidamente ordenada.

3. En cuanto al último error, bastará decir que hemos examinado la evidencia y encontramos comprobadas todas las alegaciones esenciales de la demanda.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Hutchison y Franco Soto.

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF

La opinión de la mayoría admite sustancialmente, si es que no afirma, que el demandante debió haber agotado la vía gubernativa apelando al gobernador. Esto no lo hizo el demandante y cuando se concede una apelación, debe ésta interponerse. Por justa que se demuestre que sea la reclamación del demandante, él no apeló. El hecho alegado de que

alguna otra persona apeló, no convertía la segunda apelación en un acto del peticionario. El *mandamus* debió haber sido negado.