ALEJANDRO LABORDE, demandante y apelado, *v.* EL MUNICIPIO DE ISABELA, demandado y apelante.

No. 3881.—*Visto:* Febrero 6, 1928. *Resuelto:* Abril 25, 1928.

*George C. Butte, Procurador General* y *J. A. López Acosta* y *R. A. Gómez, Sub-Procuradores,* abogados del Interventor.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

El Municipio de Isabela efectuó un contrato con Alejandro Laborde, según el cual éste prestaría sus servicios

para la consecución de un empréstito que sería obtenido por dicho municipio, garantizado con bonos. Para tal fin, el 29 de octubre de 1923 el municipio pasó una ordenanza que fué aprobada por el Consejo Ejecutivo de Puerto Rico, según lo exige la ley. La cantidad que se convino pagar al demandante fué la de cinco mil dólares, y el pago debía efectuarse tan pronto como el dinero del empréstito ingresara en el tesoro municipal. Cuando le fué presentada la reclamación al municipio, éste se negó a pagarla, fundándose únicamente en que no le había sido posible obtener autorización al efecto del Contador (*Auditor*) de Puerto Rico. La Corte de Distrito de Aguadilla revisó los hechos, y llegó a la conclusión de que los servicios habían sido prestados, y que el municipio había salido beneficiado con ellos, dictando sentencia a favor del demandante en un pleito ordinario en cobro de dinero. El municipio compareció, y en un alegato radicado ante este tribunal alega la comisión de varios errores, algunos de los cuales fueron considerados, o parcialmente considerados, en el caso de *Costas Purcell* v. *El Municipio de Las Marías*, 37 D.P.R. 19. Diremos de paso que en dicho caso, al desestimar por el voto dividido del tribunal una moción solicitando una nueva vista, presentada por el Procurador General de Puerto Rico como *amicus curiae*, lo hicimos así con la reserva interior de que en otra ocasión ante el tribunal en pleno volveríamos a revisar algunas de las cuestiones levantadas en el caso. La mayoría de la corte fué de opinión, entre otras cosas, que la reconsideración solicitada había sido presentada demasiado tarde ya que el caso había sido resuelto enteramente sobre sus méritos por esta corte.

■ En el presente caso el apelante sostiene en su alegato la necesidad de que el Contador de Puerto Rico apruebe la cuenta del demandante. El apelado trató de refutar esta contención. El caso no había sido visto ante este tribunal sobre sus méritos, cuando el 16 de diciembre de 1927 el Pro-

curador General de Puerto Rico radicó una moción de intervención a nombre del Contador de Puerto Rico. La moción fué vista ante el tribunal en pleno el 16 de febrero de 1928.

Tal vez el derecho del Contador a intervenir en este estado del procedimiento podría decidirse considerando únicamente los derechos que tiene una parte a ser agregada a los autos después que el caso se encuentra en la corte de apelación. Sin embargo, tenemos otro caso pendiente de resolución que envuelve el derecho del Contador a ser incluido como parte en la corte inferior. Si no tiene derecho a intervenir en un caso como el presente en la corte inferior, una decisión a tal efecto resolvería también la presente moción. Hemos creído prudente hacer un esfuerzo para que el tribunal en pleno considere, por lo menos superficialmente, los derechos del Contador de Puerto Rico, así como su derecho a intervenir como parte en la corte inferior. En el caso de *Pérez* v. *La Corte de Distrito de Arecibo,* una solicitud de *mandamus* contra el Auditor Municipal de Utuado, la Corte de Distrito de Arecibo ordenó o permitió tal intervención. El caso fué traído ante este tribunal mediante recurso de *certiorari,* número 585, y fué visto ante cuatro de los jueces de la corte. Consideraremos en primer término los derechos del Contador de Puerto Rico.

La legislación a considerar es la Ley del Congreso de 2 de marzo de 1917, conocida con el nombre de "Ley Jones." Si bien la Constitución de los Estados Unidos es aplicable a Puerto Rico hasta cierto punto, y la Ley Foraker lo es también en tanto en cuanto no ha sido reemplazada, la principal base del derecho constitucional es dicha Ley Jones. Los artículos a ser interpretados en la citada ley son el 20 y el 21. Leen como sigue:

"Artículo 20.—El Presidente nombrará un Contador, con un sueldo anual de $5,000, por un término de cuatro años y hasta que su sucesor sea nombrado y tome posesión. El Contador examinará, intervendrá y liquidará todas las cuentas concernientes a las ren-

tas e ingresos de cualquier procedencia que fueren, del Gobierno de Puerto Rico y de los gobiernos municipales de Puerto Rico, incluyendo fondos públicos en depósito y fondos procedentes de emisiones de bonos; e intervendrá de acuerdo con la ley y reglamentos administrativos, todos los gastos de fondos o propiedades pertenecientes al Gobierno de Puerto Rico o a los municipios o dependencias del mismo, o tenidos en depósitos por ellos. Desempeñará funciones semejantes con respecto a todas las ramas del Gobierno.

"Llevará las cuentas generales del Gobierno y guardará los comprobantes pertenecientes a las mismas.

"Será deber del Contador llamar la atención del funcionario administrativo correspondiente hacia los gastos de fondos o propiedades que, a su juicio, sean irregulares, innecesarios, excesivos o extravagantes.

"En caso de vacante del cargo de Contador o de encontrarse éste ausente, por cualquier motivo, el Gobernador de Puerto Rico podrá designar un auxiliar, quien se hará cargo de la oficina.

"La jurisdicción del Contador sobre las cuentas, bien sean de fondos o de propiedades, y sobre todos los comprobantes y antecedentes correspondientes a las mismas, será exclusiva. Con la aprobación del Gobernador, redactará y promulgará de tiempo en tiempo reglas y reglamentos generales o especiales que no sean incompatibles con la ley, referente a los métodos de contabilidad para fondos y propiedades públicos, y para fondos y propiedades tenidos en depósitos por el Gobierno o por cualquiera de sus ramas; *Disponiéndose,* que cualquier funcionario responsable de fondos o propiedades públicos podrá exigir de sus subordinados o de otras personas aquellos informes o datos adicionales que considerare necesarios para su propia información y protección.

"Las decisiones del Contador serán finales, a no ser que se apele de ellas por la parte perjudicada o por el jefe del departamento interesado, dentro de un año, en la forma que se prescribe más adelante. El Contador tendrá, excepto en los casos que se determinan más adelante, la misma autoridad que se confiere por la ley a los diferentes contadores de los Estados Unidos y al Contador del Tesoro de los Estados Unidos, y está autorizado para comunicarse directamente con cualquier persona que tenga reclamaciones pendientes de resolución ante él, o con cualquier departamento, funcionario o persona que tenga relaciones oficiales con su oficina.

"Tan pronto, después de terminado cada año económico, como las cuentas de dicho año puedan ser examinadas y liquidadas, el Con-

tador someterá al Gobernador un informe anual de las operaciones financieras del Gobierno, que demuestre los ingresos y desembolsos de los diferentes departamentos y negociados del Gobierno y de las varias municipalidades, y hará aquellos otros informes que solicitare el Gobernador o el jefe del departamento ejecutivo del Gobierno de los Estados Unidos que será designado por el Presidente según se provee en esta Ley.

"En el ejercicio de sus deberes el Contador está autorizado para citar testigos, y tomar juramentos y testimonios, y, en cumplimiento de estas disposiciones, podrá extender citaciones bajo apercibimiento y hacer obligatoria la comparecencia de testigos.

"La oficina del Contador estará bajo la inspección general del Gobernador, y constará del Contador y los auxiliares necesarios que prescribiere la ley.

"Artículo 21.—Cualquier persona perjudicada en la liquidación de su cuenta o reclamación por la acción o decisión del Contador, podrá, dentro de un año, entablar una apelación por escrito ante el Gobernador, en la cual expondrá específicamente la resolución particular, contra la que apela, tomada por el Contador, y las razones y autoridades en que se apoya para pedir la revocación de dicha decisión. La decisión del Gobernador en tal caso será definitiva, con sujeción al derecho de acción que en contrario pueda disponerse por ley."

En el primer párrafo del artículo 20 se dispone que el Contador "examinará, intervendrá y liquidará todas las cuentas concernientes a las rentas e ingresos, de cualquier procedencia que fueren, del Gobierno de Puerto Rico y de los gobiernos municipales de Puerto Rico, incluyendo fondos públicos en depósito y fondos procedentes de emisiones de bonos." Aunque las tres palabras son sinónimas hasta cierto punto, la palabra "liquidará" es la más fuerte.

Esa palabra, no obstante, es susceptible de varios significados. A veces significa una determinación final, y frecuentemente quiere decir fijar la base de la contabilidad entre dos partes, sin determinar necesariamente los derechos esenciales entre ellas. A veces sólo establece una presunción de exactitud. *Fajardo Sugar Co.* v. *Holcomb,* 16 Fed. (2d) 92, 95; *Auzerais* v. *Naglee,* 70 Cal. 60, 67, 15 Pac. 371, 373;

*City of Longview* v. *Capps,* 123 S. W. (Tex) 160, 162, 35 Cyc 1442 *et sec.;* 15 C. J. 516; 39 Cyc 761. Interpretando dicho artículo, la Corte de Circuito de Apelaciones, en el caso de *Fajardo Sugar Co.* v. *Holcomb,* dijo: "Aprobar o desaprobar un desembolso no es liquidar la base legal de ese desembolso." Más tarde analizaremos dicho caso. Palabras como "liquidar," "ajustar," y "revisar" (*settle, adjust* y *audit*) tienen un significado ambiguo y su determinación depende del contexto en que se usan.

Sobre el interés, nexo o relación que el Contador del Estado pueda tener con otro ciudadano o reclamante, poca luz puede arrojar el mero uso de la palabra "Contador." Esta es igualmente una palabra ambigua. No se ha citado caso alguno en el cual al radicarse un pleito ordinario contra el Gobierno o cualquiera de sus dependencias, el interés del Contador sea tal que éste haya sido una parte necesaria en el pleito. Las indicaciones son en sentido contrario. Uno de los casos mejor considerados procede del Estado de Washington. *State* v. *Clausen,* 44 Wash. 427, 87 Pac. 498. El inciso primero del artículo 134 de los Códigos y Estatutos Anotados, de Ballinger, disponía que será deber del contador del estado "revisar (*audit*), ajustar y liquidar todas las reclamaciones contra el estado, a excepción única de las reclamaciones que la ley expresamente exija que sean revisadas y liquidadas por otros funcionarios y personas." El caso no giró sobre la excepción mencionada. El reclamante había prestado servicios actuando como perito para determinar el costo de la construcción de ferrocarriles. La corte resolvió, tal vez eliminando la cuestión de fraude, que la Comisión de Ferrocarriles era la única que propiamente podía resolver la reclamación del peticionario. En el Estado de Washington, tenga o no discreción el funcionario, puede obligársele a cumplir un deber hacia un ciudadano que presente una reclamación; y se dijo que la única cuestión ante la corte era la justicia de la reclamación. Se admitió,

*arguendo,* que la misma práctica liberal permitiría al Contador del estado interponer cualquier defensa al ser demandado directamente. En otras palabras, nada hubo en la posición del Contador que le diera un interés de tal magnitud que hiciera que su decisión fuera terminante. Citó del caso de *People* v. *Stephens* 71 N. Y. 549, donde la corte dijo:

"No existe una ley para el soberano y otra para sus súbditos. Pero cuando el soberano se dedica a los negocios y a la dirección de empresas comerciales, y contrata con individuos, aunque no cabe una acción contra el soberano por quebrantamiento del contrato cuando éste se lleva ante una corte por cualquier motivo, los derechos y obligaciones de la parte contratante deben ser ajustados sobre los mismos principios como si ambas partes fuesen personas particulares. Ambas son iguales ante los ojos de la ley, y el soberano ocupa el lugar del traficante, del contratista y del litigante."

Se ordenó la expedición de un auto de *mandamus* contra el Contador del Estado de Washington. Véase también el caso de *State ex rel Washington Pav. Co.* v. *Clausen,* 90 Wash. 450, 452.

Se presentan reclamaciones contra el Gobierno de los Estados Unidos. En distintas ocasiones el Congreso ha provisto remedios para estas reclamaciones, a veces concediendo pleitos en la Corte de Reclamaciones, y a veces independientemente en las cortes federales. Concurrentemente con el derecho de acudir a las cortes, el Congreso también ha establecido una oficina de contabilidad como negociado del Departamento de Tesorería y también ha creado un Contador del Tesoro (Comptroller of the Treasury). En ciertos casos las actuaciones de estos funcionarios resuelven finalmente las reclamaciones. No pretendemos examinar todos los deberes impuestos a estos funcionarios. Sin embargo, varios estatutos conceden autoridad a estos funcionarios para liquidar reclamaciones. En algunos estatutos se reserva el derecho de acudir a los tribunales. Y en algunos de ellos el derecho no está definido con tanta claridad. La política

general que se sigue en los Estados Unidos, tanto por su legislación como por las decisiones de las cortes, no ha hecho que el derecho de los ciudadanos a cobrar sus reclamaciones contra los Estados Unidos dependa únicamente de las actuaciones de estos funcionarios. Las cortes no lo han hecho así a menos que el estatuto mismo haga que tal intención sea evidente. La tendencia de la Corte Suprema de los Estados Unidos es considerar como finales en el sentido ejecutivo, palabras de carácter general en un estatuto que hacen que las decisiones de los funcionarios encargados de la contabilidad sean finales. *United States* v. *Harmon*, 147 U. S. 268; *Smithmeyer* v. *United States*, 147 U. S. 342; *United States* v. *Foreman*, 48 Pac. (Okla.) 92; *United States* v. *Babcock*, 250 U. S. 331 y casos citados; *St. Louis Brownsville & Mexico Ry. Co.* v. *United States*, 268 U. S. 170, 174. En este último caso se trataba de una reclamación por transporte de soldados y de la negativa a pagar la reclamación por parte de los funcionarios encargados de la contabilidad del Tesoro. La corte dijo: ''Ninguna actuación de estos funcionarios podría obstaculizar el derecho de un reclamante a que la Corte de Reclamaciones determine si él tiene derecho a recobrar lo que reclama por virtud de un contrato celebrado con el gobierno.'' El caso de *State ex rel Savre* v. *Moore*, 25 L.R.A. 774, fué uno en que la corte, por el voto de la mayoría, resolvió que determinada asignación hecha por la Legislatura para pagar los servicios de un abogado, tenía el carácter de una gratificación, y que por tanto no tenía que ser revisada por el Contador, según lo disponía la Constitución de Nebraska. No obstante, de la decisión es aparente que en Nebraska se puede apelar para ante las cortes de las actuaciones del Contador.

. Nos referiremos nuevamente a la Carta Orgánica. Esta no sólo define los derechos y deberes del Contador, sino que en su artículo 37 da a la Legislatura local amplios poderes. Ese artículo dice así:

"La autoridad legislativa estatuida por la presente, se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables,. incluyendo la facultad de crear, consolidar y reorganizar los municipios, según fuere necesario, y proveer y derogar leyes y ordenanzas para los mismos; y también la facultad de alterar, reformar, modificar o derogar cualquiera o todas las leyes y ordenanzas, de cualquier clase, actualmente vigentes en Puerto Rico o en cualquier municipio o distrito del mismo, hasta donde dicha alteración, reforma, modificación o derogación fuere compatible con las disposiciones de esta Ley.

"No se creará por la Asamblea Legislativa ningún departamento ejecutivo no provisto por esta Ley; pero la Asamblea Legislativa podrá consolidar departamentos, o suprimir cualquier departamento, con el consentimiento del Presidente de los Estados Unidos."

Tanto de acuerdo con la Carta Orgánica como antes de su aprobación la Legislatura creó municipios con poder o capacidad para efectuar contratos y para demandar y ser demandados. Tal poder de demandar y ser demandada es inherente en una corporación municipal, una vez que es creada sin limitación en cuanto a su capacidad. *People* v. *Rosaly*, 227 U. S. 270, 277.

Sobre la capacidad inherente a ser demandados los municipios, véase "Dillon on Municipal Corporations," párrafo 771, quinta edición, página 1139; 43 C. J. 191 *et seq.;* 19 R.C.L. 337; 14 C. J. 785; *Board of Park Commissioners* v. *Nashville* (Tenn.), 185 S. W. 700.

El caso de *People* v. *Rosaly, supra,* es uno que establece la excepción a la regla. Un soberano o quasi-soberano no puede ser demandado sin su propio consentimiento, pero cualquier otro cuerpo político o corporación pueden serlo.

Con estos antecedentes, no podemos llegar a la conclusión de que fuera la intención del Congreso crear un tribunal especial o independiente en la persona del Contador de Puerto Rico. Las únicas palabras en la ley a ese efecto son las siguientes: "Las decisiones del Contador serán finales, a no ser que se apele de ellas por la parte perjudicada o por

el jefe del departamento interesado, dentro de un año, en la forma que se prescribe más adelante.'' Pero no vemos disposición alguna en tales palabras de privar a un ciudadano que efectúa un contrato con un municipio, de su derecho a demandar, o de su derecho a demandar sin acudir primeramente al Contador. Las otras palabras de dicho artículo tienden a demostrar que los derechos o decisiones del Contador son similares a los de los contadores de los Estados Unidos o del Contador del Tesoro.

El caso de *Fajardo Sugar Co.* v. *Holcomb,* 16 Fed. (2d) 92, *'supra,* es marcadamente pertinente y persuasivo, si no terminante. Según la corte, la principal cuestión era si el Contador de Puerto Rico tenía, de acuerdo con el artículo 20 de la Carta Orgánica, poder para revisar e imponer de nuevo contribuciones que ya habían sido fijadas de acuerdo con las leyes aprobadas por la Legislatura de Puerto Rico. La posición del Contador en aquel entonces, según la asumió el Procurador General, tenía dos aspectos. ''Primero, que el Contador de Puerto Rico tiene derecho a revisar (*audit*) las cuentas del Tesorero; y, segundo, que el Contador de Puerto Rico, como consecuencia de tal poder, tiene derecho a revisar cualquier decisión del Tesorero de Puerto Rico.'' La corte entonces dijo: ''Esto equivale a decir que el Contador forma parte—una parte casi dominante—del poder de imponer y cobrar las contribuciones,'' y, además, que ''desde el principio notamos que la palabra 'Contador' ordinariamente no implica poder para imponer contribuciones o para revocar las decisiones con fines contributivos. Generalmente, el Contador es un funcionario del gobierno cuyo deber es examinar las actuaciones de funcionarios que han recibido y desembolsan fondos públicos por virtud de autoridad legal. (Se citan casos.) Si de acuerdo con la Carta Orgánica de Puerto Rico, el Contador tiene, total o parcialmente, dominio sobre el poder de imponer contribuciones, deberíamos esperar que tal delegación extraordinaria haya sido concedida explí-

citamente, pero no la hallamos.'' Lo mismo podemos decir con respecto al derecho a intervenir en contratos, o de afectar la responsabilidad general de un municipio en cuanto a pleitos se refiere.

Después de copiar los artículos 20 y 21, *supra*, la corte dijo:

"No nos es posible adoptar la contención del Procurador General de Puerto Rico de que el poder del Contador de acuerdo con este artículo 20 de 'examinar, revisar y liquidar todas las cuentas concernientes a las rentas e ingresos' signifique que las decisiones del Tesorero y de otros funcionarios encargados de la administración del poder de imponer contribuciones estén sujetas a ser revisadas por el Contador. Este no es el significado natural de la palabra 'liquidar' (*settle*) interpretada a la luz del contexto y de los deberes corrientes de un contador. Indudablemente las cuentas del Tesorero, con relación al cobro de contribuciones impuestas de conformidad con la ley, están sujetas a ser examinadas y aprobadas o desaprobadas por el Contador. Pero 'liquidar' una cuenta es una cosa; determinar la base legal de tal cuenta es otra muy distinta. Liquidar las cuentas relativas a los ingresos por concepto de contribuciones no es imponer las contribuciones de las cuales se derivan tales ingresos. Aprobar o desaprobar un desembolso no equivale a liquidar la base legal de tal desembolso. El deber del Contador es llamar la atención de los funcionarios administrativos correspondientes a los gastos 'irregulares' o aun 'extravagantes'—convirtiéndose así en un crítico de los gastos, para lo cual existe en alguna otra parte cierta discreción. Pero el Contador no está investido de los poderes reales de otros funcionarios encargados de los desembolsos.''

La corte entonces pasó a tratar consideraciones más generales, o sea, el derecho de la Legislatura a aprobar leyes contributivas no sujetas a ser revisadas por el Contador, y dijo:

"El resultado es que toda la legislación portorriqueña existente ahora en los estatutos es—en un sentido muy real, aunque indirecto— obra de nuestro Gobierno Federal. Bajo tales condiciones la corte no debe asumir ligeramente que las leyes contributivas de Puerto Rico, que ahora se alega están en conflicto con el artículo 20 de la Carta Orgánica, son inconsistentes y, por tanto, nulas. Indudablemente, la relación de la Carta Orgánica con el Gobierno de Puerto

Rico es, en ciertos aspectos, igual que la relación de la Constitución de un Estado con su legislatura. *Camuñas* v. *P. R. Ry., etc., Co.* (C. C. A.), 272 Fed. 924, 928.

"Pero la analogía no es completa, ya que, después de todo, la Carta Orgánica no es otra cosa que legislación federal, y la legislación portorriqueña, aprobada expresa o implícitamente por el Congreso, tiene exactamente el mismo alcance.

"A la luz de estas explícitas disposiciones, consistentes con la armazón general del Gobierno de Puerto Rico, existentes de acuerdo con los estatutos portorriqueños aprobados por el Gobernador e implícitamente aprobados también por el Congreso, no podemos resolver que el Contador forma, según ahora se alega, parte de la maquinaria que fija y administra las contribuciones en Puerto Rico.''

La corte terminó diciendo que el Contador, aunque tiene ciertos poderes para examinar y revisar las actuaciones de otros funcionarios, no tenía autoridad para revisar y fijar nuevamente las contribuciones. Existe una fuerte analogía con respecto al derecho a revisar las actuaciones de un municipio. A menos que los municipios no tengan una existencia independiente, tal poder los obstaculizaría a cada paso. La autoridad del contador en lo referente a contratos celebrados por un municipio debe ser considerada como meramente consultiva (*advisory*). Probablemente es distinto cuando el Contador revisa las actuaciones de ciertos funcionarios del gobierno que no envuelven contratos otorgados por los municipios de conformidad con la ley.

En el caso de *Axtmayer* v. *Kessinger*, 32 D.P.R. 915, se resolvió que una persona empleada del gobierno, que demanda en cobro de sueldos, debe primero agotar los remedios administrativos. El juez que suscribe disintió de dicha opinión únicamente por el fundamento de que en dicho caso el peticionario no había agotado todos los remedios administrativos. Desde luego, el caso demuestra que hay ciertas ocasiones en que primero se debe acudir al Contador. Naturalmente, hay casos en que la actuación del Contador es una condición precedente para poderse recobrar la cantidad re-

clamada. Necesariamente tienen que haber casos en que la actuación del Contador es final, pero resolvemos que la actuación del Contador solamente puede ser consultiva cuando un ciudadano ha efectuado un contrato con un municipio de acuerdo con la ley.

Refiriéndonos nuevamente a la misma Carta Orgánica, en ésta, en su artículo 21, después de proveer una apelación de la decisión del Contador para ante el Gobernador, hallamos lo siguiente: "La decisión del Gobernador en tal caso será definitiva, con sujeción al derecho de acción que en contrario pueda disponerse por ley." Esto tiene que significar los derechos de acción que la Legislatura ha concedido o puede conceder, incluyendo el derecho a demandar a un municipio creado por ella, por una responsabilidad contraída.

Podríamos decir con algún énfasis que los municipios podían ser demandados antes de aprobarse la Ley Jones y que en ésta el Congreso demostró su intención de respetar las leyes existentes en nuestros estatutos. El artículo 57 de esta ley lee como sigue:

"Las leyes y ordenanzas de Puerto Rico actualmente en vigor, continuarán vigentes, excepto en aquello en que sean alteradas, enmendadas o modificadas por la presente, hasta que sean alteradas, enmendadas o derogadas por la autoridad legislativa que se provee en la presente para Puerto Rico, o por ley del Congreso de los Estados Unidos; y dicha autoridad legislativa tendrá poder, cuando no exista incompatibilidad con esta Ley, mediante la debida legislación, para enmendar, alterar, modificar o derogar cualquier ley u ordenanza, civil o criminal, que continúe en vigor en virtud de esta Ley, según de tiempo en tiempo lo estimare conveniente."

Por tanto, es evidente que un ciudadano no necesita obtener el consentimiento del Contador con el fin de contratar con un municipio, según resolvimos o indicamos en el caso de *Costas Purcell* v. *Municipio de Las Marías, supra*. En aquel entonces no se había llamado nuestra atención a la decisión de la Corte de Circuito de Apelaciones, *supra*.

También podríamos llamar la atención al hecho de que si

fuera necesaria la liquidación o aprobación del Contador, tal defensa podría siempre ser levantada por el municipio sin necesidad de hacer al Contador una parte en el pleito.

En lo que a la posición del Contador de Puerto Rico se refiere, podemos concebir tres posibilidades. Este puede ser un funcionario independiente del cuerpo político conocido con el nombre de El Pueblo de Puerto Rico. Puede ser un funcionario de El Pueblo de Puerto Rico o puede ser un funcionario del municipio. Creemos que queda definitivamente resuelto que él no es tal funcionario independiente, según el caso de *Fajardo Sugar Co.* v. *Holcomb,* y por las otras consideraciones de esta opinión. Si actúa como funcionario del municipio, entonces esa entidad no puede eludir responsabilidad por las actuaciones de su propio funcionario. Si el Contador actúa como un funcionario de El Pueblo de Puerto Rico, entonces es tal entidad, y no el Contador, la que tiene interés en el litigio. No hallamos intención alguna por parte del Congreso al dar a la Legislatura el derecho a crear municipios, hacer que las entidades así creadas tengan la inmunidad de ser demandadas, que existe a favor de El Pueblo de Puerto Rico.

Si bien el Congreso probablemente tiene derecho a hacerlo así, sin una indicación más directa no puede suponerse que siguió el método reseñado en el artículo 20 para privar a un ciudadano que contrata con un municipio, del derecho a que sus controversias sean resueltas en una corte. La verdadera prueba es averiguar si la corporación es o no responsable independientemente de la actuación del Contador.

Si el Contador tiene derecho a ser oído y su libramiento (*warrant*) es necesario en el caso, siempre podría alegar que no se le hizo parte en el pleito.

Supongamos, sin embargo, que el Contador sea una parte necesaria en este litigio contra el municipio de Isabela. Siendo tal parte necesaria, entonces el municipio podría

alegar durante la vista que ha de celebrarse, tal defecto de partes.

Sin embargo, el récord se forma en la corte inferior. En apelación no tenemos poder o autoridad para agregar nada al mismo. Solamente podemos cambiar los autos ante esta corte para conformarlos a los de la corte inferior. Las controversias entre las partes y la teoría de la corte sentenciadora sobre el caso surgen en la corte de distrito. Por controversias queremos decir todo aquello que razonablemente puede deducirse de las alegaciones o de la prueba practicada.

■ La corte de apelaciones no puede agregar una parte que no estuvo ante la corte inferior. La siguiente cita de 3 C. J. 1029 remotamente parecería indicar lo contrario. Esta lee así:

"La práctica referente a la intervención o adición de nuevas partes en una corte de apelaciones no es uniforme. En algunas jurisdicciones la autoridad para permitir tal intervención o adición es ejercida como inherente en la corte o de conformidad con el estatuto; mientras que en otras jurisdicciones se niega tal autoridad. Bajo uno u otro punto de vista parecería, sin embargo, que una parte necesaria no podría ser agregada después de expirado el tiempo para comenzar un recurso de error. Cuando la corte ordena que el apelante agregue algunas partes, debe conceder un tiempo razonable para tal objeto."

Sin embargo, las decisiones que hemos examinado bajo tal cita demuestran que las palabras "otras partes" significan casi invariablemente personas que fueron partes en la corte inferior pero que no fueron traídas originalmente dentro de la jurisdicción de la corte de apelaciones. Algunos de los casos son substituciones de partes o casos de personas, como contribuyentes, que eran constructivamente partes ante la corte inferior. No hallamos caso alguno en que una parte enteramente nueva que no estuvo directa o constructivamente ante la corte inferior, pueda intervenir en una corte de apelaciones.

*Debe denegarse la petición presentada por el Contador.*