RAFAEL COSTAS PURCELL, demandante y apelante, *v.* GOBIERNO MUNICIPAL DE LAS MARÍAS (MUNICIPIO DE LAS MARÍAS), demandado y apelado.

No. 3926.—*Visto:* Noviembre 29, 1926.   *Resuelto:* Junio 25, 1927.

1. CORPORACIONES MUNICIPALES—ACCIONES—DE LA EVIDENCIA—VALOR RAZONABLE DE SERVICIOS PRESTADOS—BAJO CONTRATO EXPRESO.—En acción para el cobro de servicios prestados bajo un contrato expreso, independientemente de las cuestiones de que éste sea *ultra-vires,* de la intervención de otros en el trabajo efectuado bajo aquél, fraude u otras semejantes, el demandante no está en la obligación de demostrar el valor razonable de los servicios prestados.

2. CORPORACIONES MUNICIPALES—CONTRATOS EN GENERAL—VALIDEZ DE LOS MISMOS—EN GENERAL.—Cuando los servicios a prestar a un municipio bajo un contrato caen, por su naturaleza, dentro de los deberes impuestos a funcionarios del Gobierno Insular o municipal, se comete un fraude contra aquél.

3. CONTRATOS—CUMPLIMIENTO O QUEBRANTAMIENTO *(Breach)*—EVIDENCIA—CUMPLIMIENTO DEL CONTRATO.—Cuando uno que se ha hecho cargo de la tramitación y documentación de un empréstito hace algo tendente a obtener postores o para facilitar la presentación de las ofertas de éstos, ello constituye un cumplimiento del contrato.

4. CORPORACIONES MUNICIPALES—CONTRATOS EN GENERAL—VALIDEZ DE LOS MISMOS—EN GENERAL.—Si un municipio celebra un contrato con una persona para ésta hacer un trabajo que, no parte de los deberes oficiales de los funcionarios del Gobierno, puede hacerse en las oficinas del Gobierno, nada impide que el municipio pague tales servicios.

5. CORPORACIONES MUNICIPALES—CONTRATOS EN GENERAL—FACULTAD DEL MUNICIPIO PARA CONTRATAR EN GENERAL.—Un contrato por el cual un municipio emplea un agente para que ayude en la venta de unos bonos de un empréstito municipal es uno de aquellos que los municipios están autorizados a efectuar.

6. CORPORACIONES MUNICIPALES—CONTRATOS EN GENERAL—FACULTAD DEL MUNI-
CIPIO PARA CONTRATAR EN GENERAL.—Un municipio tiene facultad, dentro de
ley, para autorizar a su comisionado de servicio público a utilizar los ser-
vicios de un agente que se haga cargo de la tramitación y documentación de
un empréstito y convenir el pago razonable de los servicios de éste.

7. PRINCIPAL Y AGENTE—ACCIÓN PARA EL PAGO DE COMPENSACIÓN—EN GENERAL.
—Cualquier persona que, con un municipio, entre en un contrato expreso de
la clase que los municipios están autorizados a efectuar, tiene derecho a que
se le pague por los servicios prestados bajo el mismo, aún cuando a dicho
contrato no le hubiera impartido su aprobación el Auditor Insular.

8. CORPORACIONES MUNICIPALES—CONTRATOS EN GENERAL—APROBACIÓN PREVIA DEL
AUDITOR INSULAR—CONTRATO PARA EL PAGO DE DINERO.—Para efectuar un
contrato para el pago de dinero con un municipio, no es necesario obtener
previamente permiso del Auditor Insular ni el que éste juzgue la validez de
aquél.

9. CORPORACIONES MUNICIPALES—ACCIONES—PARTES EN LAS MISMAS—AUDITOR DE
PUERTO RICO COMO PARTE DEMANDADA.—En acción en cobro de dinero en-
tablada contra un municipio basada en contrato para el pago de aquél, no
es necesario incluir al Auditor de Puerto Rico como parte.

SENTENCIA de *Charles E. Foote,* J. (Mayagüez), declarando sin lu-
gar la demanda, con costas. *Revocada,* declarándose la demanda
con lugar, sin costas.

*Antonsanti & La Costa,* abogados del apelante; *Benet & Souffront,*
abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Rafael Costas Purcell demandó al Municipio de Las Ma-
rías para recobrar la cantidad de \$2,000 en pago de servi-
cios prestados en la venta de bonos municipales. La su-
puesta obligación del municipio surgió de un convenio es-
crito celebrado entre el demandante y don Eustaquio M. Gaz-
tambide, Comisionado de Servicio Público, etc., cargo que
corresponde en la actualidad al de alcalde. No se levantó
cuestión alguna referente a la celebración del convenio. En
realidad, los alegados servicios fueron aprobados por las au-
toridades locales y se ordenó el pago de los mismos. Poste-
riormente, el Auditor de Puerto Rico se negó a aprobar la
cuenta. Al apelarse para ante el Gobernador, éste no revisó
las conclusiones o resoluciones de dicho Auditor, sino que
dejó que el apelante recurriera a las cortes. En el pleito
que más tarde se entabló, la Corte de Distrito de Mayagüez
falló en contra del demandante por varios motivos.

El deber más importante impuesto por el alegado contrato al apelante estaba expresado en los siguientes términos: "que como agente del Municipio de Las Marías en el asunto se haga cargo de la tramitación y documentación del empréstito de $70,000 cuya contratación fué acordada por la Asamblea Municipal, etc., a excepción de la venta de los bonos que se efectuará en pública subasta."

Substancialmente, la corte llegó a la conclusión de que el único trabajo que el demandante realizó de acuerdo con el contrato fué el de suministrar modelos de ordenanzas preparadas por el Negociado de Asuntos Municipales del Departamento de Tesorería; que cualquiera otra gestión que se practicó para efectuar el empréstito fué hecha por funcionarios del municipio o del Gobierno de Puerto Rico o estaba dentro de la incumbencia de dichos funcionarios; que el trabajo realizado por el apelante que no cae dentro de las atribuciones de los varios funcionarios públicos fué hecho a instancias o en beneficio de los compradores de los bonos, especialmente porque había que venderlos y fueron vendidos en pública subasta, y que de ningún modo los servicios prestados por el demandante valían más de $100.

Igualmente, la corte resolvió que dado el poco trabajo que el demandante pudo realizar o realizó para el municipio de Las Marías, el contrato hecho era un fraude para dicho municipio. La corte resolvió que el contrato también era *ultra vires;* que no se podía hacer contrato alguno sin la intervención y aprobación del Auditor de Puerto Rico, y que no podía entablarse con éxito un pleito sin incluir como parte al Auditor. El apelante señala la comisión de dieciocho errores.

Hay una línea de casos que resuelve que cuando se declara nulo un contrato con un municipio, el demandante puede, no obstante, recobrar el valor razonable de los servicios prestados, y quizás la corte inferior tuvo esto en mente al declarar que los servicios del demandante no valían razonablemente más de $100. Sin embargo, haciendo caso omiso

de las cuestiones de *ultra vires,* y la posible intervención del Auditor, fraude, y otras parecidas, la corte estaba equivocada al resolver que el demandante debe demostrar en todo caso el valor razonable de los servicios prestados.

El apelante, ayudado por un hermano, dió pasos tendentes a efectuar el empréstito. Se efectuó el empréstito, y no podemos deducir de la evidencia que los servicios del demandante en relación con ese empréstito carecieran en absoluto de valor. Como cuestión de derecho, nos sentimos obligados a resolver que dada la generalidad del contrato, no era necesaria gran prueba sobre los servicios prestados, suponiendo siempre que el contrato efectuado era válido y existente y dentro de las atribuciones del municipio. Con estas reservas, el demandante no tenía que probar un *quantum meruit.* El tenía un contrato expreso, y cumplió con el mismo, aún cuando fuera ayudado en ello por departamentos del Gobierno.

Estamos muy de acuerdo con la corte inferior en que si los servicios que el demandante tenía que prestar eran de tal naturaleza que caían enteramente dentro de los deberes impuestos a los funcionarios municipales o a otros funcionarios del Gobierno, entonces se estaba cometiendo un fraude contra el Municipio de Las Marías.

La corte y el apelado dan gran peso a los siguientes hechos: Que el hermano del demandante, entre los años 1922 y 1924 y hasta dos meses antes de efectuarse la venta de los bonos en este caso, era un funcionario del Gobierno de Puerto Rico; que en realidad de verdad era empleado de Auditoría encargado de los empréstitos municipales, y que parte de los deberes que le había impuesto el Auditor era ayudar a los municipios en toda la documentación y contabilidad necesaria para la consecución de préstamos, si no para la tramitación de los mismos; que mientras dicho hermano trabajaba en la oficina del Auditor prestó ayuda al demandante y que él más o menos concibió la idea de obte-

ner éste y otros contratos de los municipios que se proponían obtener empréstitos.

Este es un caso en que hay una probabilidad razonable de que los servicios prestados por el demandante no eran muy necesarios, dada la actitud asumida y las ofertas de servicios hechas por la oficina del Auditor, así como las reglas promulgadas por dicho funcionario. No obstante, dando la peor interpretación posible a los actos del hermano del demandante, el municipio de Las Marías firmó este contrato con los ojos abiertos.

Presumiblemente, la posición de los funcionarios del municipio sería que se trataba de la tramitación de un empréstito complicado y que, no siendo peritos en estos asuntos, necesitaban la ayuda de alguien que se hiciera cargo ''de toda la tramitación y documentación'' necesaria para activar dicho empréstito. Es enteramente concebible que los funcionarios del municipio creyeran que el demandante les ayudaría a conseguir postores.

Convenimos enteramente con la corte inferior o con el apelado en que los propuestos servicios del demandante no fueron completamente los de un corredor ordinario, ya que los bonos tendrían que venderse en pública subasta. No obstante, resolvemos, dejando a un lado otros servicios, que si el demandante o sus agentes hicieron algo tendente a obtener postores o para facilitar la presentación de las ofertas de éstos, tal actuación de parte del demandante constituyó un cumplimiento de los términos del contrato que requería que el demandante se hiciera cargo de la ''tramitación y documentación'' del empréstito, lo que era similar a los servicios de un corredor.

Quizás la piedra de toque de este caso es si el demandante hizo algún trabajo que no estaba dentro de la incumbencia de los deberes gubernamentales, y si lo hizo, el elemento de fraude desaparece necesariamente de este caso. Si el demandante sirvió de instrumento para conseguir pos-

tores o ayudó a que éstos hicieran ofertas, ello equivale a parte de la "tramitación" de un empréstito. No tenemos dudas de que la oficina del Auditor ayudara y que en realidad ayudó a los postores en perspectiva, pero tal ayuda no forma parte de los deberes del Auditor. Es evidente que no es parte de los deberes del Auditor buscar postores. Veamos lo que hizo el demandante.

Hubo prueba incontrovertida tendente a demostrar que el apelante mismo suministró información a personas interesadas en la compra de los bonos; que cuando el municipio o algunos de sus funcionarios recibían peticiones de compradores en perspectiva solicitando información, esos funcionarios enviaban las cartas o peticiones al apelante; que él tuvo correspondencia con periódicos que anuncian la venta de bonos, y que éstos fueron anunciados. Los autos tienden a demostrar que el apelante tuvo bastante correspondencia con un tal Sr. Thompson, abogado que representaba la casa que finalmente compró los bonos, y el apelante además manifestó que en cuanto a este extremo recibió también ayuda de su hermano Pedro Juan Costas. Este dijo que él preparó los documentos que los abogados de los compradores necesitaban y solicitaron, con el fin de que dichos abogados dieran su opinión con respecto a los pagos que había que hacer por los bonos. También declaró que hizo investigaciones para los compradores con relación a los sitios en que debían depositar el dinero del empréstito, y que incidentalmente obtuvo algunas ventajas en cuanto a los intereses que debían pagarse; que sostuvo continuamente correspondencia con los compradores y sus abogados con el fin de obtener el pago puntual de los bonos; que entre los documentos que preparó y le fueron pedidos por los abogados de los compradores estaba una copia certificada de todos los procedimientos habidos en la emisión de los bonos por el municipio de Las Marías; que él se hizo cargo de poner los anuncios en los periódicos, y que algunos de los anuncios fueron preparados por él, y otros por su hermano Rafael, el apelante

en este caso. Ambos hermanos declararon que el principal trabajo realizado por Pedro Juan Costas en la tramitación de la venta de estos bonos fué hecho después de haber salido de la oficina del Auditor.

Resolvemos que estos servicios eran enteramente independientes de cualesquiera deberes impuestos a cualquiera de los funcionarios del Gobierno. Estos servicios por sí mismos constituían el cumplimiento del contrato. No hemos perdido de vista el hecho de que la corte inferior resolvió que estos servicios fueron prestados en beneficio de los compradores de los bonos. Hay las declaraciones directas e incontrovertidas del demandante y su hermano en sentido contrario. Además, dada la naturaleza del contrato en este caso, cualesquiera servicios prestados a los compradores de los bonos fueron prestados al municipio. Tales servicios tenían que facilitar y activar la venta de dichos bonos.

Además de estos servicios, la prueba del demandante tendió a demostrar que el apelante y su hermano prestaron varias clases de ayuda al municipio en la venta de los bonos; que ellos ayudaron a distintos funcionarios del Gobierno en varios asuntos relacionados con la venta de los bonos. La corte y el apelado insistieron en que el apelante nada hizo para ayudar al municipio en la preparación de la ordenanza para la venta de los bonos, ni en su aprobación por el Consejo Ejecutivo, que es el organismo que la ley exige apruebe tales ordenanzas. *Prima facie* esto es probablemente cierto, porque el contrato con el municipio fué firmado después de haberse pasado la ordenanza. El apelante presentó prueba tendente a demostrar que ayudó en la preparación de la ordenanza, y aún si la ayuda prestada fué anterior a la fecha en que se firmó el contrato, no sería violento retrotraer el contrato a la época en que se prestó tal ayuda.

Sin embargo, se insiste fuertemente en que tales servicios incumbían propiamente a los funcionarios del Gobierno. Algunas de las gestiones hechas por el apelante o su hermano es probable que cayeran claramente dentro de los de-

beres impuestos a distintos funcionarios del Gobierno. **No** obstante, hubo otras cosas que ellos hicieron que no caían claramente dentro de los deberes especificados por la ley, aunque de acuerdo con algunas reglas y reglamentos, **ya** sea la oficina del Gobernador o la del Auditor, o el Departamento de Tesorería, estuvieron dispuestos a ayudar a efectuar el trabajo de balde. Pero si el municipio celebró un contrato con el apelante para que éste hiciera el **mismo** trabajo que, (aunque no formaba parte de sus deberes oficiales), pudo ser realizado en las distintas oficinas del Gobierno, no hay nada en la ley que impida que el municipio pague tales servicios, aún cuando los mismos pudiesen haberse obtenido gratuitamente. El municipio pudo haber preferido tener su propio agente en vez de continuar haciendo solicitudes a los funcionarios del Gobierno, especialmente tratándose de servicios que ellos no estaban obligados a prestar de acuerdo con la ley.

El apelado alega que el municipio no tenía poder **para** autorizar al Sr. Gaztambide, Comisionado de Servicio Público, etc., a efectuar este contrato con el apelante; que **parte** de los deberes a él impuestos eran de la incumbencia del alcalde mismo, y que la ordenanza aprobada por la asamblea municipal debió haber fijado las condiciones del contrato y no debió haber dado a dicho comisionado facultades tan amplias para fijar las condiciones en cuanto a la remuneración que había que pagársele al apelante. Convenimos con **el** apelado en que si no hubo la debida autorización, no **era** posible que existiera ratificación alguna, y en realidad no la hubo.

A menos de existir un verdadero fraude, el comisionado estaba autorizado por la ordenanza para emplear un agente, y de acuerdo con esa ordenanza, tenía autoridad para convenir el pago de una suma razonable. Una suma no razonable sería un fraude. No hallamos que el pago de $2,000 por los servicios prestados en la tramitación de un empréstito de $70,000 no sea razonable.

Las autoridades demuestran que los municipios pueden hacer contratos de esta clase. Ellos pueden efectuar contratos de corretaje o utilizar los servicios de un abogado. *Dillon on Municipal Corporations,* tomo 1, sección 244; *Mayor v. Sands,* 105 N. Y. 210; *Kramrath* v. *City of Albany,* 127 N. Y. 575, y otros casos más citados en el alegato del apelante.

El trabajo realizado por el apelante en este caso era de carácter mixto. En lo que a su ayuda para conseguir postores se refería, su trabajo participaba del carácter de un corredor. En lo que se refería a los consejos y ayuda que él y su hermano prestaron a los compradores y al municipio en la venta de los bonos, el trabajo era similar al de un abogado.

Llegamos entonces a la cuestión de si el municipio de Las Marías estaba autorizado para hacer este contrato. La sección 37 de la Carta Orgánica dispone como sigue:

"La autoridad legislativa estatuída por la presente, se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables, incluyendo la facultad de crear, consolidar y reorganizar los municipios, según fuere necesario, y proveer y derogar leyes y ordenanzas para los mismos; y también la facultad de alterar, reformar, modificar o derogar cualquiera o todas las leyes y ordenanzas, de cualquier clase, actualmente vigentes en Puerto Rico o en cualquier municipio o distrito del mismo, hasta donde dicha alteración, reforma, modificación o derogación fuere compatible con las disposiciones de esta Ley."

De acuerdo con esta ley o con leyes anteriores del Congreso, la Legislatura de Puerto Rico ha autorizado a los municipios a efectuar contratos de varias clases. La Ley Municipal de 1921, Leyes de ese año, página 461, dispone que:

"Toda corporación municipal que deseare contraer una deuda, tomar dinero a préstamo o emitir bonos sobre su propio crédito, deberá presentar al Consejo Ejecutivo de Puerto Rico una ordenanza debidamente adoptada por la asamblea municipal, la cual deberá contener las circunstancias que determinan la conveniencia de que

se contraiga la deuda o se haga el empréstito, el montante del mismo, el fin o fines a que habrá de dedicarse, y dispondrá la forma de redimir o amortizar la deuda, con el interés y mediante las condiciones que la asamblea municipal determinare.''

De acuerdo con esto, la asamblea municipal pasó una ordenanza disponiendo en su sección 14 como sigue:

''El Comisionado de Servicio Público, Policía y Prisiones de Las Marías, Puerto Rico, por la presente queda autorizado para designar, si lo creyere conveniente, una persona que se haga cargo de la tramitación y documentación de este empréstito hasta su realización.''

La ordenanza tal como se pasó fué aprobada por el Consejo Ejecutivo y tuvo el efecto de ley, y autorizaba al municipio por medio de su comisionado a utilizar los servicios de un agente.

Por tanto, el contrato efectuado en este caso cae dentro de la clase de contratos que los municipios están autorizados a efectuar.

El apelado no nos convence de que un municipio no pueda hacer contratos para emplear un agente que le ayude en la venta de bonos, aun cuando tales bonos puedan ser vendidos en pública subasta.

Bajo estas circunstancias, cualquier persona que entre en un contrato con un municipio tiene derecho a que se le pague. La corte y el apelado se basan en la sección 20 de la Carta Orgánica para decir lo contrario. La misma dispone así:

''El Presidente nombrará un Contador, con un sueldo anual de $5,000, por un término de cuatro años y hasta que su sucesor sea nombrado y tome posesión. El Contador examinará, intervendrá y liquidará todas las cuentas concernientes a las rentas e ingresos, de cualquier procedencia que fueren, del Gobierno de Puerto Rico y de los gobiernos municipales de Puerto Rico, incluyendo fondos públicos en depósito y fondos procedentes de emisiones de bonos; e intervendrá, de acuerdo con la ley y reglamentos administrativos, todos los gastos de fondos o propiedades pertenecientes al Gobierno de Puerto Rico o a los municipios o dependencias del mismo, o te-

nidos en depósito por ellos.   Desempeñará funciones semejantes con respecto a todas las ramos del Gobierno.

*      *      *      *      *      *      *

"Será deber del Contador llamar la atención del funcionario administrativo correspondiente hacia los gastos de fondos o propiedades que, a su juicio, sean irregulares, innecesarios, excesivos o extravagantes.

*      *      *      *      *      *      *

"La jurisdicción del Contador sobre las cuentas, bien sean de fondos o de propiedades, y sobre todos los comprobantes y antecedentes correspondientes a las mismas, será exclusiva.   Con la aprobación del Gobernador, redactará y promulgará de tiempo en tiempo reglas y reglamentos generales o especiales que no sean incompatibles con la ley, referentes a los métodos de contabilidad para fondos y propiedades públicos, y para fondos y propiedades tenidos en depósito por el Gobierno o por cualquiera de sus ramas; *Disponiéndose,* que cualquier funcionario responsable de fondos o propiedades públicos podrá exigir de sus subordinados o de otras personas aquellos informes o datos adicionales que considerare necesarios para su propia información y protección.

"Las decisiones del Contador serán finales, a no ser que se apele de ellas por la parte perjudicada o por el jefe del departamento interesado, dentro de un año, en la forma que se prescribe más adelante.   El Contador tendrá, excepto en los casos que se determinan más adelante, la misma autoridad que se confiere por la ley a los diferentes contadores de los Estados Unidos y al Contador del Tesoro de los Estados Unidos, y está autorizado para comunicarse directamente con cualquier persona que tenga reclamaciones pendientes de resolución ante él, o con cualquier departamento, funcionario o persona que tenga relaciones oficiales con su oficina.

*      *      *      *      *      *      *

"En el ejercicio de sus deberes el Contador está autorizado para citar testigos, y tomar juramentos y testimonios, y, en cumplimiento de estas disposiciones, podrá extender citaciones bajo apercibimiento y hacer obligatoria la comparecencia de testigos.

"La oficina del Contador estará bajo la inspección general del Gobernador, y constará del Contador y los auxiliares necesarios que prescribiere la ley."

Existe un conflicto aparente entre las disposiciones de las secciones 37 y 20 de la Carta Orgánica.   Se sostiene que

el Auditor tiene en algo derecho a intervenir en cualquier contrato para el pago de dinero autorizado por el municipio. El apelado dice en su alegato que:

". . . una persona, por ejemplo, el apelante, que desee efectuar con algún municipio un contrato como el que nos ocupa, debe primero obtener la autorización del Auditor de Puerto Rico, esto es, la revisión de dicho contrato por dicho funcionario a fin de que éste le imparta su aprobación y juzgue sobre su validez."

No podemos creer que fuera la intención del Congreso que cualquier persona que efectúe un contrato con un municipio tenga primeramente que obtener permiso del Auditor para hacerlo. ¿Estarían las personas que han comprado bonos en Puerto Rico de acuerdo con varias leyes aprobadas por la Legislatura sujetas a que la oficina del Auditor de Puerto Rico revise la validez de sus contratos? ¿Debe un propuesto comprador de bonos obtener primero la aprobación directa del Auditor? Nos sentimos obligados a resolver lo contrario. Generalmente, cuando la Legislatura convierte a los municipios en cuerpos políticos, éstos tienen, dentro de los límites de su autoridad, todos los derechos contractuales que tiene cualquier individuo.

Siempre se ha entendido que los municipios pueden hacer contratos en esa forma. Es inconcebible que en una ley como nuestra Carta Orgánica, en que el Congreso ha prescrito que la Legislatura no aprobará ley alguna que menoscabe la obligación de los contratos, apruebe por sí mismo una ley que obligue a toda persona que haga un contrato con un municipio a obtener primero la autorización de un tercero que no es una de las partes contratantes. En este caso, en que ni el Pueblo de Puerto Rico ni el Auditor aparecen como partes, estamos muy deseosos de abstenernos de fijar una limitación indebida a los poderes y deberes del Auditor de Puerto Rico. El apelante dice que sus deberes consisten meramente en "intervenir" (*audit*) en la contabilidad pública. No estamos seguros en cuanto al alcance de

esta palabra, ni estamos satisfechos de que el Auditor no tenga más amplios poderes que una supuesta mera intervención.

Sin embargo, debe haber algunas materias sobre las cuales la legislatura puede actuar, pudiendo asignarse dinero y pagarse por virtud de contratos o en alguna otra forma, casos en los cuales los deberes del Auditor son meramente administrativos o ministeriales. En el tomo 19 de R.C.L., página 1045, se discute el efecto de la concesión o rechazamiento de reclamaciones, y el párrafo termina con las siguientes palabras:

". . . . Hay menos inclinación por parte de las cortes de aplicar la doctrina de *res adjudicata* a la no concesión de una reclamación en contra del peticionario que la que hay en cuanto a su concesión en contra del municipio, y la regla general es que en lo que concierne al peticionario, la presentación de su reclamación es meramente uno de los varios pasos exigídoles para que pueda cobrársela al municipio, y si el municipio, por medio de su Junta de Intervención, no concede la reclamación, ello no le impide entablar una acción por la misma ante las cortes.''

Tenemos la idea, hasta que se nos convenza de lo contrario, de que en un contrato que se origina de acuerdo con una ley de la Legislatura, en que el peticionario cumple con todos los requisitos, la intervención del Auditor es meramente formal o ministerial.

Esta fué aparentemente la opinión del Gobernador y del Procurador General, según aparece de la carta del Gobernador transcrita en la página 138 de los autos. Tenía la naturaleza de una interpretación contemporánea, que siempre es favorecida por la ley.

En cuanto a que se incluya al Auditor como parte, las consideraciones que anteceden son contrarias a tal necesidad. El municipio ha llegado a ser como cualquier otro deudor. Por supuesto, antes de que se efectúe el pago de una cuenta gubernamental o quasi-gubernamental, es necesario el libramiento del Auditor.

*Debe revocarse* la sentencia apelada y dictarse otra declarando *con lugar la demanda,* con intereses legales a partir de la fecha de la interposición de la misma, pero sin especial condenación de costas.

El Juez Asociado Sr. Hutchison no intervino en la resolución de este caso.

El Juez Presidente Sr. del Toro disintió.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

A mi juicio la sentencia apelada debe confirmarse.

Creo que el Auditor de Puerto Rico era una parte necesaria según se desprende de los autos y de las conclusiones a que se llega en la misma opinión de la mayoría.

Además, un análisis de la prueba me convence de que la verdadera parte interesada en el contrato de que se trata no era el demandante sino su hermano Pedro Juàn Costas que desempeñaba el puesto de Jefe de la División de *Audits* de la oficina del Auditor Insular cuando el contrato fué celebrado y comenzó a cumplirse. El agente era innecesario. Todo el auxilio que pudo prestar al municipio pudo prestarlo y lo hubiera prestado oficialmente la misma auditoría o cualquier otra oficina del gobierno sin gasto alguno para los contribuyentes. Bajo esas circunstancias y habiéndose aprovechado de su cargo oficial en su propio beneficio la verdadera parte interesada, entiendo que el contrato está viciado de fraude y no puede servir de base para reclamación alguna.

En términos generales estoy conforme con la opinión emitida por la corte de distrito para fundar su sentencia.