SERRA, GARABÍS & Co., INC., demandante y apelada, *v.* MUNI-CIPIO DE RÍO PIEDRAS, demandado y apelante.

No. 4705.—*Sometido:* Febrero 18, 1930. *Resuelto:* Junio 23, 1931.

*Guerra Mondragón & Soldevila,* abogados del apelante; *Feliú & La Costa,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Serra, Garabís & Co., Incorporada, demandó ante la Corte de Distrito de San Juan al municipio de Río Piedras, y alegó, sustancialmente, que es la sucesora de Serra, Garabís y Compañía, en comandita, a la que había comprado todos sus negocios de droguería y farmacia, y sus créditos, y entre éstos, uno contra el municipio de Río Piedras por $6,072.33 por importe de medicinas, drogas y artículos farmacéuticos vendidos a dicho municipio; y cuyos artículos y géneros fueron suministrados, vendidos y entregados por Serra, Garabís y Compañía, S. en C., a dicho municipio en fechas noviembre 23, diciembre 19, de 1924, y enero 16, febrero 26, y marzo 26, de 1925, recibiendo y aceptando el municipio los artículos y empleándolos en la farmacia municipal de Río Piedras, para beneficio de los enfermos pobres de dicho municipio, y siendo el valor razonable de los mismos el fijado en las facturas y que se anota en la demanda; que el municipio se obligó a pagar el importe de las medicinas, drogas y artículos farmacéuticos a la presentación del borderó en duplicado, firmado por Serra, Garabís y Compañía, S. en C., acompañado de la orden del municipio, haciendo el pedido correspondiente, como los presentó Serra, Garabís y Co., S. en C., requiriendo el pago, lo que también ha hecho la demandante, negándose el municipio a satisfacer el importe. Y pidió sentencia contra el municipio por $6,072.33, intereses legales y costas.

El demandado presentó moción eliminatoria, que se declaró sin lugar, y luego excepción previa, que siguió la misma suerte. Todavía después de esa resolución, presentó moción

para que se hiciera más específica la demanda, y que fué declarada sin lugar. Y luego contestó, admitiendo adeudar a la demandante el borderó de 23 de noviembre de 1924, por $1,700, y el de diciembre del mismo año por $22.25; impugnó y negó los borderós de: 19 de diciembre de 1924, por $721.94, 16 de enero de 1925, por $872, 26 de febrero de 1925, por $1,065.27, y marzo de 1925, por $1,710.87, de las que dice no compró, ordenó ni recibió partida alguna. Alega que la subasta fué adjudicada a Serra, Garabís y Co., S. en C., y había sido decretada por ordenanza aprobada para el año de 1924 a 1925, pero a condición de que las órdenes fueran firmadas por el director de beneficencia municipal, quien no libró más órdenes que las que se reconocen en la contestación, que son las únicas que ha recibido acompañadas de la orden del municipio; y que, después de despachadas esas dos órdenes, no había partida en el presupuesto municipal para el pago de medicinas, y que, aunque el municipio hubiera ordenado más medicinas y artículos, tal acción sería anticonstitucional y nula por quebrantar el Acta Orgánica y las leyes del país. Y pidió se declarara con lugar la demanda en cuanto a los borderós reconocidos, y sin lugar en lo demás.

Como esencial para este caso, debe decirse que de la prueba documental aparecen estos extremos:

(a) La ordenanza para remate del servicio de medicinas para la farmacia municipal de Río Piedras, durante el año económico de 1924 a 1925. Por este documento aparece que: se saca a remate la compra de medicamentos, según lista hecha por el farmacéutico municipal; se fija la fecha de la subasta y el sitio para celebrarla, condición de las proposiciones, y forma de proceder en ellas, y adjudicar la buena pro; y se establece que el licitador que obtenga la adjudicación deberá dentro de los cuatro días siguientes a tal adjudicación hacer entrega de los medicamentos y drogas, que de la lista unida a la ordenanza se le pidan, y tendrá derecho a que se le pague su importe tan pronto sean recibidos de

conformidad por el farmacéutico municipal. Y en la cláusula o sección 6 leemos:

"Sección 6.—El que hubiere obtenido la buena pro del remate está obligado como queda expresado a suministrar dentro de las condiciones y precios estipulados por él mismo en su proposición todas las medicinas que se necesiten en la Farmacia Municipal hasta la terminación del año económico correspondiente, a medida que se vayan solicitando."

La ordenanza tiene fecha 31 de mayo de 1924; y a ella se une la lista de medicamentos y efectos.

(b) Las órdenes de las siguientes fechas:

19 diciembre de 1924, por valor de $721.94.

16 de enero de 1925, por $872.

26 de febrero de 1925, por $1,065.27.

26 de marzo de 1925, por $1,710.87.

Con ellas aparece certificación, firmada por J. Vilá Mayo, farmacéutico municipal, expresiva de que los artículos enumerados son necesarios para el uso de esa dependencia. Aparecen en blanco las firmas de la certificación del auditor municipal, y la aprobación.

(c) Una copia del artículo o sección 24, de un reglamento para el régimen de la contabilidad municipal.

(d) Copia del Presupuesto ordinario de Río Piedras.

En el capítulo V, Beneficencia, aparece una partida, No. 95, para medicinas a enfermos pobres, curas antisépticas, etc., por $4,000. De la certificación aparece que ese presupuesto fué aprobado por la asamblea municipal el 1º. ó el 10 de junio de 1924.

Esto, aparte de otros documentos de que, si es necesario, haremos relación.

De un somero examen de estos documentos resulta, en primer lugar, que la alegación del demandado con respecto a que en la ordenanza para la subasta se exigía como condición para el despacho de las medicinas una orden firmada por el director de beneficencia municipal, no es exacta, en lo

que a la ordenanza se refiere. Este es un extremo que encontramos de importancia en las alegaciones, y que precisábamos comprobar.

Prestaron su testimonio en el caso, por el demandante, Francisco Garabís, de Serra, Garabís & Co., Incorporada, y J. Vilá Mayo, farmacéutico municipal de Río Piedras, y por el demandado el Doctor Pereira Leal, Director de Beneficencia de Río Piedras, en 1924 y 1925.

La corte decidió el caso a favor de la demandante. Y de su sentencia en ese sentido ha apelado el demandado.

Siete errores se asignan por el demandado a la sentencia recurrida. Los tres primeros se refieren a las denegaciones de la moción eliminatoria, las excepciones previas, y la moción para especificación. El cuarto a la apreciación de la prueba. El quinto, con respecto a la suficiencia de la defensa de que faltando asignación en el presupuesto, no viene obligado el municipio al pago de artículos así adquiridos. El sexto a la validez de la deuda. Y el séptimo a que no se aplicó el reglamento del auditor o contador.

■ El primer error se formula así:

"La corte de distrito erró al desestimar la moción eliminatoria del demandado."

En la moción se solicitó que se eliminaran de la demanda algunas palabras del párrafo III, y todo el párrafo VI; del III, lo que sigue:

". . . que le adeudaba el municipio demandado a dicha sociedad de Serra, Garabís y Co., S. en C., importe de medicinas, drogas y artículos farmacéuticos vendidos por esa compañía a dicho municipio."

Se había alegado la existencia de un contrato, y el suministro de medicinas, etc., por precio, y la falta de pago de éste. No encontramos que la alegación de que ahora se trata pueda calificarse de conclusión legal. El concepto "adeudar" cuando se une a esas alegaciones de hechos, no puede esti-

marse como una conclusión legal, no hay en el idioma corriente y vulgar otra forma de expresión del hecho de deber cantidades, que la usada por la demandante. Si extremamos la exigencia, apenas habrá fórmula aceptable de significar determinados hechos en una alegación.

En los casos *Martínez* v. *Oppenheimer*, 31 D.P.R. 904, y *Alfaro* v. *Alonso*, 27 D.P.R. 53, ha sostenido este tribunal que cuando las conclusiones de ley son complementarias de hechos alegados, ellas son permisibles. Y aunque se considerara que esas palabras contienen conclusiones de ley, serían permisibles en este caso.

■ En el párrafo VI de la demanda se alegó que el valor en el mercado de las medicinas y drogas suministradas, era el que figura en la nota que se une a la demanda. De esa nota y de cómo fué remitida al municipio, se habla en la alegación V.

El demandado-apelante sostiene que reclamándose una cantidad procedente de un contrato, esta alegación VI es impertinente, y origina confusión. Pero en la realidad, no hay posibilidad de que ella, por sí sola, produzca en el ánimo de un demandado la confusión que se alega, ni le reste medios de defensa; a menos que el demandado prescinda de leer las demás alegaciones, lo que no sería una buena forma de enterarse de la demanda.

La corte de distrito procedió acertadamente al resolver acerca de la moción.

■■ Contra la demanda se ofrecieron excepciones previas de ambigüedad e imprecisión, indebida acumulación de acciones, y falta de hechos suficientes para determinar causa de acción. La primera se fundó en que por las alegaciones no se sabe si el cobro es por artículos vendidos, o por artículos suministrados, sin previa aceptación. La simple lectura de las alegaciones, convence de que no hay tal ambigüedad. La segunda excepción se fundó en que en la demanda aparecen dos distintos motivos de deber: el precio

convenido de una venta, y el importe de géneros recibidos sin previo convenio respecto al valor. No hay tal; la demanda es clara en cuanto a la causa de acción que no es más que una, la del cobro del valor de artículos suministrados bajo contrato con el municipio. Y la tercera forma de excepción, tampoco era de estimar, ya que en la demanda aparecen todas las alegaciones necesarias. Así lo estimó la corte, que declaró sin lugar las excepciones. A esta declaración se refiere el segundo señalamiento de error, que no es de apreciar en esta apelación.

▋ El tercer señalamiento hace relación a la resolución de una moción para hacer más específica la demanda, fundándose en que en unos párrafos de ella se alegaba que la cantidad procedía de artículos y drogas vendidos al demandado, y en otros se alega, no el precio de venta, sino el valor razonable de los artículos en el mercado. De hecho ello no es así; ni así resulta de la demanda.

Como la corte resolvió esa moción en contra del demandado, éste señala como error la resolución. Aparte de que es dudoso que por regla general ello sea un error apelable, la resolución de la corte fué correcta.

▋ El cuarto señalamiento aparece formulado así:

"Erró el tribunal inferior al estimar que la evidencia aportada era suficiente para sostener el fallo pronunciado."

En la realidad, y cualquiera que sea la forma en que se presente, este señalamiento no envuelve otra cosa que la teoría de errónea apreciación de la prueba. Podría, repitiéndose la constante jurisprudencia de este tribunal, disponerse del señalamiento, teniendo presente que ni se imputa a la corte *a quo* pasión, prejuicio o parcialidad, ni se insinúa que hubiera en la apreciación manifiesto y patente error en perjuicio de derechos esenciales o procesales del apelante. Pero no hay inconveniente en penetrar en el argumento expuesto.

Nótase que no se discute la entrega de medicinas y drogas,

ni el valor de las mismas, ni su recepción por el farmacéutico municipal, ni su uso y empleo. En verdad lo que se discute es el efecto de determinadas cláusulas de la ordenanza para la subasta; y entonces hay que declarar que el argumento no está en consonancia con el título del señalamiento.

En la opinión del juez de distrito, encontramos, en relación con la prueba, lo que sigue:

". . . La de la demandante consistió en un contrato de venta otorgado por Serra, Garabís, Incorporated; copia de la ordenanza adoptada por el Concejo de Administración de Río Piedras en mayo 31 de 1924 'para el remate de provisión de medicamentos para la farmacia municipal durante el año económico de 1924–1925'; y cuatro órdenes dirigidas a Serra, Garabís & Co., S. en C., para el despacho de medicinas, fechadas en diciembre 19 de 1924 y enero 16, febrero 26 y marzo 26 de 1925. También declararon por parte de la demandante los testigos Francisco Garabís y J. Vilá Mayo. La prueba del demandado consistió en los incisos (a) e (i) de la sección 24 del Reglamento de contabilidad del auditor, aprobado en 26 de mayo de 1920; en la página 34 del libro registro de órdenes del municipio y en una copia del presupuesto ordinario del Municipio de Río Piedras para el año fiscal 1924–25. También declaró como testigo el Dr. Pereira Leal, Director de Beneficencia durante el año 1924–25. De toda esta prueba practicada, la corte considera probados los siguientes hechos: que por ordenanza de mayo 31, 1924, el municipio sacó a remate el suministro de medicinas para la farmacia municipal durante el año fiscal 1924–25; que la adjudicación le fué hecha a Serra, Garabís & Co., S. en C., y que las cláusulas de entrega y pago de medicinas de la dicha ordenanza dicen así:

" 'El licitador que hubiere obtenido la subasta deberá dentro de los cuatro días siguientes a la fecha de la adjudicación hacer entrega de los medicamentos o drogas que, de las expresadas en la lista de que se trata en la sección 3a. de esta ordenanza se le pidan y tendrá derecho a que se le abone su importe tan luego como aquéllas sean recibidas por el Farmacéutico Municipal y resulten conformes con la factura respectiva.

" 'Sección 6a.—El que hubiere obtenido la buena pro del remate está obligado como queda expresado a suministrar dentro de las condiciones y precios estipulados por él mismo en su proposición todas las medicinas que se necesiten en la Farmacia

Municipal hasta la terminación del año económico correspondiente, a medida que se vayan solicitan¡do.'

"Que Serra, Garabís & Co., S. en C., vendió sus negocios, acciones y créditos a Serra, Garabís & Co., Incorporated.

"Que las órdenes para entrega de medicinas fechadas diciembre 19, 1924, enero 16, febrero 26, y marzo 26, 1925, firmadas por J. Vilá Mayo, farmacéutico municipal, fueron despachadas por Serra, Garabís & Co., S. en C., y recibïdas por dicho J. Vilá Mayo, como farmacéutico municipal; que n'o hubo reclamación por parte del municipio; que dichas órdenes son copias de los originales que preparó el mismo J. Vilá Mayo, como farmacéutico municipal; que las medicinas se utilizaron en el hospital y en la farmacia municipal; y que a fines del año económico 1924–25 se presentaron los pedidos al Director de Beneficencia y éste los rehusó firmar, porque eran de fecha atrasada y no había fondos y además las órdenes no se hicieron de acuerdo con el reglamento del auditor."

Como prueba, no podía razonablemente hacerse otra apreciación que la que hizo la corte. Si se trata de su suficiencia, hay que declarar que no hubo error; y si se deseó discutir la consecuencia legal de tal prueba, no es el cuarto señalamiento el propiamente formulado para llenar el fin a que se aspira.

Es perfectamente claro que el municipio que fué al contrato con Serra, Garabís & Co., S. en C., conocía las cláusulas 5 y 6 de la ordenanza, y que sabía la obligación que por ellas contraía de pagar el importe de las medicinas y drogas tan pronto como las recibiera, de conformidad, el farmacéutico municipal. El hecho de tal recepción de géneros, determinaba, según el contrato, la obligación de pago.

La defensa de falta de asignación en el presupuesto es débil, y es un tanto arriesgada. En términos corrientes, lejos de la tecnología jurídica y judicial, este demandado nos dice: "Yo hice un contrato, para que el otro contratante me suministrara todas las drogas y medicinas que yo necesitaba para mi hospital o mis servicios de beneficencia, durante un año; me obligué a pagarle al otro contratante esas drogas y medicinas; pero como no consigné en mi presupuesto

cantidad suficiente, no tengo que pagar lo que por mi contrato adeudo.'' La aplicación de esta defensa a todos los contratos en la vida, haría necesaria la supresión de los códigos, que tienen por base fundamental las reglas de ética, incompatibles con la teoría en que la defensa se basa.

Con razón ha dicho el juez de distrito en su opinión:

"El hecho de que no haya bastantes fondos para pagar los pedidos, por lo que no pudieron ser autorizados, no es defensa. . .

". . . Además, que la misma ley municipal dispone que cuando se incurra en deudas por las corporaciones municipales de Puerto Rico, las deudas, una vez reconocidas, serán aprobadas e incluídas en el próximo presupuesto, como un pago preferente. Disposición de ley que tiene un gran alcance moral, porque prestigia y salva el crédito de dichas corporaciones.''

Considerando todas las razones aducidas por la parte apelante en apoyo de sus señalamientos de error, y resolviendo en cuanto a los mismos, declaramos lo que sigue:

El municipio de Río Piedras ha aprobado una ordenanza para subasta del suministro de medicinas, drogas y otros artículos de ese ramo, para el año económico 1924 a 1925. La subasta se ha llevado a cabo bajo esa ordenanza. El servicio es por todo el año económico 1924 a 1925, y el pago de ese servicio es por el mismo lapso de tiempo. Esas son las bases del contrato, y en su cumplimiento hay que atenerse a ellas.

Supongamos que el adjudicatario o rematista Serra, Garabís y Co. se negara, durante el transcurso de ese año, a suministrar las drogas, medicinas y material que se había obligado a traer. Sería indudable la acción del otro contratante para obligarle a cumplir, y para que indemnizara los perjuicios. Aquí el que se niega al pago es el municipio; y la acción es del otro contratante.

Adjudicada la subasta, al municipio toca proveer fondos con que cubrir las entregas de las medicinas, etc. No es esto parte de la obligación de Serra, Garabís y Co., que tiene el derecho de confiar en que el municipio cumplirá sus

obligaciones, y dispone o dispondrá de los medios económicos para ese fin.

El municipio asigna en presupuesto una suma para el pago de ese servicio, y cumplimiento de ese contrato. La suma asignada puede ser excesiva, por darse un año de condiciones de salud pública excepcionalmente favorables, y no necesitarse toda la cantidad. Es perfectamente claro que el contratista nada tiene que reclamar en ese sobrante. La suma asignada resulta escasa, porque hubo que pedir más drogas que en cualquier año corriente. También es perfectamente claro que del error en la asignación, o de la desgracia del municipio, no ha de ser la víctima el contratista. Esto es lo que la moral y el sentido común, dictan y resuelven.

██ Una interpretación de la ley que lleve a una consecuencia absurda, no puede sostenerse. En el caso *Celis Alquier* v. *Méndez,* 18 D.P.R. 88, ha dicho este tribunal.

"Aunque es verdad que existe el principio legal de que debe darse efecto a todos los preceptos de una ley, también los tribunales han declarado que este principio debe observarse en tanto en cuanto tal interpretación no lleve a resultados absurdos.
"Glover v. U. S., 164 U. S. 298.
"U. S. v. Fisher, 2 Cranch (U. S.) 386.
"Bailey v. Commonwealth, 74 Ky. 688.
"Pond v. Maddox, 38 Cal. 572."

Aquí se aduce el párrafo 26, artículo 34 de la Ley Jones, Acta Orgánica de Puerto Rico, que se lee así:

"La Asamblea Legislativa no hará ninguna asignación, ni autorizará ningún gasto en virtud de la cual o del cual los gastos del gobierno de Puerto Rico durante cualquier año económico excedan de las rentas totales previstas a la sazón por la ley y aplicables a dicha asignación o gasto. . ."

Y se sostiene que esta regla legal es aplicable a los municipios.

No es éste el caso ante nos. El municipio de Río Piedras contrata un servicio; el que contrata con el municipio no

tiene que llegar, en su investigación, hasta ver cuáles son los posibles ingresos de ese municipio, y cuáles los egresos; materia toda de un presupuesto que no compete al contratista hacer; y presupuesto que se hace y aprueba con posterioridad a ese contrato. Es más; la materia de ese contrato es de aquellas que, en su cuantía, no pueden ser determinadas de antemano con toda exactitud. Un año puede haber escaso número de enfermos pobres, y el gasto de medicinas moderado; y otro de epidemias, y el gasto crecido. Pero de ninguna forma vemos cómo puede aplicarse al caso presente la limitación impuesta a la Legislatura, con el objeto de que no cree gastos que no concuerden con sus ingresos. ¿Dónde encontrar aquí la prueba de que, al votarse la ordenanza y al celebrarse la subasta, el municipio de Río Piedras sabía que sus ingresos no le autorizaban a sostener el gasto de medicinas y drogas para enfermos pobres? La aplicación de ese precepto de ley a este caso conduciría al absurdo de declarar que el municipio de Río Piedras no podía, en el momento en que lo hizo, votar una ordenanza para la subasta del servicio de medicinas y drogas para enfermos pobres; y al mayor abundo de que pudo aceptar las medicinas, emplearlas en el servicio de sus hospitales, y no pensar en pagarlas.

El artículo 9 de la Ley Municipal, tal como aparece de la enmienda de la Ley No. 60 del año 1921, da a los municipios plenas facultades para todo asunto de naturaleza puramente local y que se relacione con los ramos de obras, instrucción, beneficencia, orden y seguridad pública. El municipio de Río Piedras, al pasar la asamblea la ordenanza, y al llevarse a cabo la subasta, estaba dentro de sus facultades de acuerdo con este precepto legal. Y el contrato para suministro de medicinas, drogas y otros efectos, era legal y perfecto para el contratista, ya que se hizo mediante ordenanza y subasta. No se fija en él una cantidad total para el año; a eso ha de proveer el municipio, por su presupuesto,

sin que en ello tenga intervención el contratista; si el municipio no lo hace o lo hace mal, no hay una sola razón legal o moral que lleve a que el contratista sufra las consecuencias.

Pero aun hay menos razones para que el municipio demandado pueda alegar con éxito su propia culpa o su propia falta de diligencia. La Ley municipal ha preceptuado que todos los gastos en que incurriere el gobierno de cada municipio por concepto de atenciones de sus oficinas y departamentos, se pagarán por esos municipios, que tienen la facultad de proveer fondos para ello. (Art. 8, Ley Municipal de 1919.) Si el municipio faltando a ese precepto legal, no provee fondos, no puede hoy alegar, en su favor, la falta por él cometida.

Entendemos que la parte que así ha procedido, que decreta, por ordenanza en forma, la subasta de determinado servicio, que por la misma ordenanza conviene en pagar los medicamentos y efectos, que hace la adjudicación a una entidad, y que recibe y usa en su beneficio tales medicinas y efectos, si no ha consignado cantidad bastante para el pago no puede utilizar para su defensa el hecho de que, faltando a sus obligaciones, no hizo tal consignación. Esa parte está impedida de utilizar tal defensa.

Para terminar en este particular conviene recordar aquí que la ley municipal, enmendada por Ley No. 60 de 1921, establece lo que sigue:

"Art. 50.—Los municipios no podrán asignar en sus presupuestos cantidad alguna para el pago de sueldos, sin que antes se hayan consignado por su orden, los créditos necesarios para las siguientes atenciones:

\* \* \* \* \* \* \*

"(b) Cualquier déficit que resultare en las operaciones de años anteriores, o gastos a que estuviere legalmente obligado el municipio por contratos ya celebrados o por otras causas, . . .

\* \* \* \* \* \* \*"

Admite la ley la posibilidad de déficits procedentes de años anteriores y causados por contratos ya celebrados.

El artículo 10 de la antes citada Ley Municipal, preceptúa que toda obra pública municipal y toda adquisición de material, se hará en pública subasta, cuando el valor exceda de $500 en casos de municipios de primera clase, y de $200 en los demás; y da las reglas de las subastas para ejecución de obras y para suministro de efectos y materiales.

La condición de la ordenanza y la subasta, tiene una positiva influencia en la validez del contrato. No así, a nuestro entender, la del estricto cumplimiento del reglamento para la contabilidad municipal, del Auditor de Puerto Rico. La parte apelante no ha querido distinguir entre la celebración del contrato, momento que en derecho civil se llama de perfección del contrato, y la ejecución del mismo, o consumación. Para que el contrato de que tratamos fuera válido y eficaz, y produjera en las partes obligaciones y derechos, bastan la ordenanza y la subasta. Una vez que ésta se ha celebrado, y se hizo la adjudicación, nacen para el municipio el derecho a que el otro contratante le envíe las medicinas y efectos, y el deber o la obligación de pagar su importe; y para el que obtiene la adjudicación, el deber de entregar los géneros, o materiales, y el derecho a percibir su precio. La única limitación que viene del contrato mismo es que la entrega se haga al farmacéutico municipal, y que las medicinas, drogas y efectos sean necesitados por la farmacia municipal. El reglamento de contabilidad afecta a ésta y a cómo debe ser llevada por los municipios, pero no hace más o menos válidos los contratos.

En el caso *Laborde* v. *Municipio de Isabela*, 38 D.P.R. 65, hemos examinado las funciones y carácter del Contador de Puerto Rico, si bien en un aspecto diferente del de este caso. Allí copiamos, de la Ley Orgánica, el texto de la sección o artículo 20, y de él un párrafo que dice, en parte, así:

" " . . . Con la aprobación del Gobernador, redactará y promulgará de tiempo en tiempo reglas y reglamentos generales o especiales que no sean incompatibles con la ley, referente a los métodos

de contabilidad para fondos y propiedades públicos, y para fondos y propiedades tenidos en depósitos por el Gobierno o por cualquiera de sus ramas; . . .' ''

Vese, sencillamente, que los reglamentos del contador vienen por la ley, limitados en dos aspectos: primero, por la materia, que es la de métodos de contabilidad para fondos y propiedades públicos; segundo, por la eficacia, limitada por las palabras ''que no sean incompatibles con la ley,'' lo que significa, sin esfuerzo de interpretación, que la ley es siempre superior a cualquier reglamento; verdad que en Derecho tiene los caracteres de axiomática.

En la misma decisión que acabamos de citar, y comentando la palabra ''liquidará'' del artículo 20 de la Ley Orgánica, se dice:

''Esa palabra, no obstante, es susceptible de varios significados. A veces asignifica una determinación final, y frecuentemente quiere decir fijar la base de la contabilidad entre dos partes, sin determinar necesariamente los derechos esenciales entre ellas.''

En el caso *Costas Purcell* v. *Municipio de Las Marías*, 37 D.P.R. 19, dijo este tribunal:

''No podemos creer que fuera la intención del Congreso que cualquier persona que efectúe un contrato con un municipio tenga primeramente que obtener permiso del Auditor para hacerlo. ¿Estarían las personas que han comprado bonos en Puerto Rico de acuerdo con varias leyes aprobadas por la Legislatura sujetas a que la oficina del Auditor de Puerto Rico revise la validez de sus contratos? ¿Debe un propuesto comprador de bonos obtener primero la aprobación directa del Auditor? Nos sentimos obligados a resolver lo contrario. Generalmente, cuando la Legislatura convierte a los municipios en cuerpos políticos, éstos tienen, dentro de los límites de su autoridad, todos los derechos contractuales que tiene cualquier individuo.

''Siempre se ha entendido que los municipios pueden hacer contratos en esa forma. Es inconcebible que en una ley como nuestra Carta Orgánica, en que el Congreso ha prescrito que la Legislatura no aprobará ley alguna que menoscabe la obligación de los contratos, apruebe por sí misma una ley que obligue a toda persona que

haga un contrato con un municipio a obtener primero la autorización de un tercero que no es una de las partes contratantes. En este caso, en que ni el Pueblo de Puerto Rico ni el Auditor aparecen como partes, estamos muy deseosos de abstenernos de fijar una limitación indebida a los poderes y deberes del Auditor de Puerto Rico. El apelante dice que sus deberes consisten meramente en 'intervenir' (*audit*) en la contabilidad pública. No estamos seguros en cuanto al alcance de esta palabra, ni estamos satisfechos de que el Auditor no tenga más amplios poderes que una supuesta mera intervención.''

 Debemos considerar algún otro extremo importante.

Sentemos, desde ahora, que el demandado no opuso alegación alguna de fraude. La alegación de que las medicinas y drogas no habían sido ordenadas ni recibidas, no puede considerarse más que como una alegación de hecho. No creemos que se haya intentado, en un litigio que es asunto serio, decir que, faltando ciertos requisitos a juicio del apelante, no se pueden entender ''ordenadas'' o ''recibidas'' las drogas. Esto sería un juego de palabras, y no estaríamos en el deber de considerarlo. Pero como cuestión de hecho, la prueba ha sido adversa a esa negación. La negación no equivalía a la alegación de fraude, que ya se ha dicho con frecuencia, debe ser expresa.

En la contestación no encontramos que se ataque de nulidad el contrato de suministro. Ahora, en la apelación se intenta este ataque; y declaramos que ése no es el procedimiento, y ése no es el derecho del apelante; él no puede, en este trámite, cambiar su caso.

 ¿Puede el apelante defenderse ahora alegando la nulidad del contrato, o la ineficacia de los actos consecuencia del mismo?

En el curso de las relaciones no jurídicas, si una persona va, no ya contra sus propias palabras y actos, sino contra las naturales consecuencias de aquéllas y éstos, la sanción corresponde a la moral, que condena tal conducta, y censura más o menos gravemente al que la observa. Pero en las rela-

ciones de carácter jurídico, aquellas palabras y aquellos actos pueden crear un estado de derecho en el que descansan otras personas, ya directa e inmediatamente, como el mismo contratante, ya mediata e indirectamente, como los que de ese contratante derivan un derecho que ejercitar o una obligación que cumplir. El orden social se encuentra afectado en este caso. Y entonces la sanción viene de la ley. De aquí origina la teoría de que nadie puede ir contra sus propios actos, conocida a todas las legislaciones, de las más antiguas a las más modernas, y especialmente estudiada por la jurisprudencia de los Estados Unidos en su desenvolvimiento en la teoría de *estoppel*.

Susceptibles de esa sanción son, lo mismo las personas individuales y naturales que las colectivas y jurídicas. En la aplicación a éstas encontramos algunas limitaciones, propias del especial carácter de persona por creación de la ley.

En este caso tenemos:

(*a*) Un municipio que tiene, por ley, el derecho de someter a subasta la concesión del servicio de medicinas y drogas por un año, y mediante una ordenanza, en la que se consignan los términos y condiciones de esa subasta.

(*b*) Una ordenanza en la que se anuncia esa subasta, se fija el término del servicio en un año, 1924 a 1925, y se determina que la entrega de las drogas, medicinas y efectos se haga al farmacéutico municipal, y desde la recepción por éste de tales géneros, el contratista tiene el derecho de cobrar su importe.

(*c*) Una subasta en que se adjudica el servicio a Serra, Garabís y Co.

(*d*) Un contrato de suministro de medicinas y drogas que se cumple por parte de Serra, Garabís y Co., entregando las medicinas, drogas y efectos que se le piden por el farmacéutico municipal. El municipio admite en parte el cumplimiento de ese contrato, que en esa parte tiene por válido y eficaz; y ahora rechaza la existencia de otras entregas, y

alega que fueron nulas porque el pedido no llevaba la firma del director de beneficencia local.

(c) Una negativa del municipio a pagar las medicinas, drogas y efectos que, según la prueba fueron entregados; y en cuanto a su devolución se alega ahora que las medicinas están, no ya en la posesión de un tercero, sino más allá de su posesión, porque fueron consumidas y usadas en el hospital (página 31, alegato impreso del apelante).

En estas condiciones, el municipio demandado se halla impedido de alegar esa defensa, porque con sus actos llevó a su ahora demandante a creer que podía desprenderse de sus mercancías, según se le fueran pidiendo, y tener el derecho de cobrar su importe. Creó el municipio un estado de derecho, contra el que no puede ir ahora. Aceptó, tomó y consumió las medicinas, como aparece del alegato del apelante. Y alega luego que no tiene fondos consignados en presupuesto. Aparece que en el presupuesto del año de que se trata se consignaron cuatro mil dollars para servicio de medicinas a enfermos pobres.

Tratando la doctrina de *estoppel,* en la decisión en *Rabell* v. *Rodríguez et al.,* 24 D.P.R. 561, se ha dicho por este tribunal:

". . . la doctrina de que nadie puede ir contra sus propios actos (*estoppel*), como ha sido enunciada por el juez de distrito, es tan conocida para el Código Civil como para cualquier corte de equidad; y desde uno u otro punto de vista, la aplicación que de ella se hizo a los hechos en el caso de autos era enteramente adecuada. Sostener que un vecino puede permanecer en silencio por semanas o meses, observando la construcción gradual de una casa en un solar contiguo o romper ese silencio a intervalos entrando en conversación agradable con el dueño de la nueva edificación haciendo comentarios sobre su apariencia atractiva, pero sin mostrar señal de protesta u oposición, y que luego pueda obtener un mandamiento de una corte para la demolición de dicha edificación, simplemente porque los funcionarios municipales o insulares puedan haber permitido ciertas ligeras desviaciones de cualquier ordenanza relativa a construcciones o reglamentos de sanidad produciría tal burla de la jus-

ticia que conmovería la conciencia e inteligencia de cualquier buen ciudadano, ya fuere un abogado o un hombre sin profesión. . .''

Esos conceptos son aplicables a este caso; y en el fondo fueron los mismos que inclinaron la conciencia y la inteligencia del juez de distrito al pronunciar la sentencia apelada en este caso.

Se ha sostenido que en los casos de municipios, si el contrato de que se habla es nulo por opuesto a la constitución y a la ley, los municipios no están impedidos de negar la validez del contrato. Pero en este caso, no encontramos que el contrato fuera nulo por opuesto a la Constitución o a la ley, ya que se trata de un servicio público que el municipio puede contratar previa ordenanza y bajo subasta, y esos requisitos se cumplieron.

Pero también se ha dicho que una municipalidad que ha recibido los beneficios de un contrato que no tenía poder para hacer, está impedida de negar la falta de autoridad para hacer el contrato a menos que devuelva los beneficios recibidos.

En el caso *Macon* v. *Huff*, 60 Ga. 221, se dice:

"La equidad, sin embargo, exige que cada litigante que busca su ayuda actúe en equidad; y, toda vez que el demandado ha gastado grandes sumas de dinero en cercar, embargar, drenar y ornamentar el parque, de todo lo cual ha recibido el beneficio la ciudad, no se interpondrá la equidad en beneficio del demandante para anular el contrato, aunque sea ilegal, a menos que el demandante primero actúe con equidad, y para actuar con equidad, la ciudad debe pagarle al demandado el dinero así invertido, más sus intereses, restituyendo al demandante, en cuanto fuere practicable, a su statu quo, a falta de fraude de su parte."

En el caso *Grand Island Gas Co. et al.* v. *West,* 28 Nebraska 852, 45 N. W. 242, la ciudad de Grand Island había contratado con la Grand Island Light and Fuel Co. el servicio de luz por un año, y la compañía servía la luz, y presentó sus cuentas por los meses de julio, agosto, septiembre, octubre y noviembre, y fueron admitidas. Un contribuyente

siguió acción contra la compañía y varios oficiales de la ciudad, y obtuvo una orden restringiendo a la ciudad de pagar ciertas cuentas de luz, y a la compañía de reclamarlas. En la decisión se dijo:

"Creemos que la corte erró al impedir el pago de estas reclamaciones concedidas por el consejo municipal. La ciudad ha alegado el beneficio del contrato haciendo uso de la luz así suministrada, y no sería equitativo cancelar el contrato sin devolver a la compañía de la luz, sin exceder del precio del contrato, el valor razonable de la luz consumida con anterioridad a la interposición de este pleito. Es regla familiar que aquel que busca la equidad debe practicarla. El hecho de que el contrato a virtud del cual se suministró la luz era ilegal, no importa. No releva al municipio de ser justo."

Innecesario citar mayor número de casos.

No existen los errores señalados, por lo que *debe confirmarse la sentencia apelada*.